453 So.2d 1242 (1984)
STATE of Louisiana
v.
Reginald Ray HANDLEY.
No. 84 KA 0050.
Court of Appeal of Louisiana, First Circuit.
June 26, 1984.
Writ Denied October 5, 1984.
*1244 Ossie Brown, Dist. Atty. by Ralph Roy, Asst. Dist. Atty., Baton Rouge, for plaintiff-appellee.
Kathleen S. Richey, Asst. Public Defender, Baton Rouge, for defendant-appellant.
Before LOTTINGER, EDWARDS and ALFORD, JJ.
LOTTINGER, Judge.
Defendant, Reginald Ray Handley, was indicted by a grand jury on June 7, 1973, of one count of aggravated rape in violation of La.R.S. 14:42.[1] On October 5, 1973, defendant entered a plea of guilty without capital punishment and was thereafter sentenced to be confined at hard labor for the period of his natural life.
Following numerous post-conviction applications, defendant's guilty plea was ordered vacated and he was granted a trial on the merits.[2] On November 8, 1983, *1245 a jury found defendant guilty as charged. The court sentenced defendant to be confined at hard labor for the period of his natural life.[3] It is from this conviction that defendant brings an appeal alleging fourteen assignments of error:
1. The court erred in denying defense challenge for cause of a potential juror.
2. The court erred by allowing the prosecution to use peremptory challenges.
3. The court erred by denying defense motion which sought to require the State of Louisiana to formally plea bargain with and sentence defendant proportionally with co-defendants and/or to enforce the original plea agreement.
4. The court erred by overruling defense objection to a witness' answer.
5. The court erred by allowing hearsay testimony by a police officer.
6. The court erred by overruling defense objection to a police officer's testimony which included legal conclusions and prejudicial characterizations.
7. The court erred in denying defense motion to suppress confession.
8. The court erred by overruling defense objections to testimony regarding a previous trial.
9. The court erred by allowing the prosecution to introduce into evidence two photographs over defense objection.
10. The court erred by overruling defense objection to a witness being allowed to testify.
11. The court erred by overruling defense objection to requiring a witness to testify.
12. The court erred by overruling defense objection to a witness being allowed to testify.
13. The court erred by allowing the prosecutor to make prejudicial comments in closing argument.
14. The court erred by accepting a verdict contrary to the law and/or evidence.
Assignments of error one, eight, nine, ten, eleven and twelve were not briefed and are thereby considered abandoned. Uniform RulesCourts of Appeal, Rule 2-12.4.
On the evening of April 3, 1973, a seventy-two year old woman was beaten, robbed *1246 of various valuables including her automobile, and twice raped at gunpoint in her Baton Rouge residence.
On April 25, 1973, defendant, then sixteen years old, was implicated as one of the three perpetrators when his uncle, with whom he resided, contacted the Baton Rouge City Police to report that defendant had been bringing various items of property into their home. Concerned about the origin of that property, defendant's uncle authorized the police to view the items.
Pursuant to that authorization, police searched defendant's home and found the victim's watch stolen the night of April 3, 1973, among the property stored under defendant's mattress.
In addition, the victim's car keys were found on defendant's person when he was brought to the police station for questioning on April 26, 1973. Later that same day, defendant confessed to his involvement in the instant crime.

ASSIGNMENT OF ERROR NUMBER 2
Defendant contends that it is unconstitutional for the state to be allowed the use of peremptory challenges during jury selection as such use by the state infringes on his constitutional right to peremptorily challenge prospective jurors. Defendant does not allege facts supporting particular abuses of the prosecutor's exercise of the state's peremptory challenges in the instant case; but rather, attacks as unconstitutional the state's right to discretionary exercise of peremptory challenges.
Defendant argues that his right to peremptory challenges is not only superior but pre-empts the field because it is constitutionally guaranteed by La. Const. art. I, § 17 (1974) while the state's authorization, found at La.Code Crim.P. art. 799, is only statutory in origin.
A general standard of judicial interpretation of a state constitution is that, unlike the federal constitution, a state charter's provisions are not grants of power but instead are limitations on the otherwise plenary power of the people of a state exercised through its legislature. In the exercise of legislative power of the state, the legislature may exact any legislation that the state constitution does not prohibit. Board of Elementary and Secondary Education v. Nix, 347 So.2d 147 (La.1977).
In State v. Sharp, 174 La. 860, 141 So. 859 (1932), our courts found then La.R.S. 15:354 constitutional despite the failure of our constitution of 1921 to expressly address the state's right to challenge jurors peremptorily.[4] The state constitution merely, then as now, safeguards the accused's right to peremptorily challenge as many prospective jurors as may be fixed by legislative enactment.
Article 799 is neither in conflict with nor an infringement on the grant of La. Const. art. I, § 17 (1974).
We conclude that the trial court's having allowed the state to use a number of peremptory challenges in accordance with the provisions of article 799 was not error.

ASSIGNMENT OF ERROR NUMBER 3
Defendant contends that his previous plea bargain should have been enforced.
Defendant argues that the State of Louisiana should have been ordered by the federal district court, when granting his writ of habeas corpus, to specifically perform the original plea bargain in accordance with defendant's understanding of that bargain rather than having been offered the further choice of vacating his guilty plea and bringing him to trial.
Notwithstanding that this Court is not the proper forum for challenging the form and/or substance of a federal district court order, the choice offered the state in the instant case is in keeping with the United States Supreme Court directive in Santobello v. New York, 404 U.S. 257, 92 S.Ct. *1247 495, 30 L.Ed.2d 427 (1971), a case involving review of an unkept plea bargain. Therein the court provided:
The ultimate relief to which petitioner is entitled we leave to the discretion of the state court, which is in a better position to decide whether the circumstances of this case require only that there be specific performance of the agreement on the plea ... or whether, in the view of the state court, the circumstances require granting [to petitioner] ... the opportunity to withdraw his plea of guilty. (92 S.Ct. 499)
Moreover, there is considerable precedent in the State of Louisiana for permitting a constitutionally infirm guilty plea to be withdrawn after sentencing either by means of appeal or post conviction relief. State v. Galliano, 396 So.2d 1288 (La. 1981); State v. Banks, 383 So.2d 1009 (La. 1980); State ex rel. Clark v. Marullo, 352 So.2d 223 (La.1977).
In brief, defendant further argues that subjecting him to the instant trial on the merits constituted double jeopardy because he was sentenced twice for the same crime.
Clearly, defendant's allegation of double jeopardy has no merit. Defendant's federal habeas corpus petition and supporting memorandum realleged the grounds he presented in his state post conviction application specifically praying that his original plea be vacated and that his original sentence be set aside.[5]
Double jeopardy does not attach when a defendant himself moves to set aside his conviction. La. Const. art. I, § 15 (1974); La.Code Crim.P. art. 591; State v. Smith, 406 So.2d 1314, 1315 (La.1981).
Accordingly, we find no merit in the arguments urged by means of this assignment of error.

ASSIGNMENTS OF ERROR NUMBER 4 AND 6
Defendant alleges that a state witness was allowed to give improper testimony.
The complaint refers to a colloquy on direct examination between the state and its witness, Sergeant Cantu.
Q. Okay, whatwhat did you do then upon receiving this information?
A. Well, we quickly secured the scene and contacted the detective division, the District Attorney's office, our supervisor and the coroner's office, which is our procedure when we establish that a heinous crime has been committed.
Q. Okay, uh,
Mr. Jackson: I didn't get that last part.
Q. When we have established that a heinous crime has been committed.
Mr. Jackson: I'm going to object again to the officer stating conclusions or adding adjectives to the matter.
Generally, a witness unless qualified as an expert can not properly testify as to any impression or opinion that he may have. La.R.S. 15:463. He is not, however, prohibited from testifying as to the natural inferences drawn from facts he personally observed. State v. Haarala, 398 So.2d 1093 (La.1981).
The witness had previously stated the facts upon which the inference (that a heinous crime had been committed) was based. Having personally observed the physical condition of the elderly victim and the condition of her home, in our view, the witness as an experienced police officer had sufficient experience and knowledge of violent offenses against the person to express such an opinion.
To the extent that the witness' answer was an improper conclusion, it was not prejudicial error. Unsolicited and unresponsive testimony is not chargeable to the state to provide a ground for the reversal of a conviction. State v. Jones, 332 So.2d 466 (La.1976).

*1248 ASSIGNMENT OF ERROR NUMBER 5
The defendant contends that the trial court erred in admitting the testimony of Sergeant Cantu as it constituted objectionable hearsay.
In response to prosecutor's series of questions designed to elicit a response as to the complaints, offensewise, made by the victim to the investigating officer, Sergeant Cantu responded:
She said she had been beaten several times, hit with a pistol over the head, over the eye, that she was taken in the back room by these three subjects and was raped at gunpoint and during the rape she was also hit again.
However, the defense counsel's hearsay objection was sustained with the court's agreeing to caution the jury that the witness' answer was not to be considered as substantive evidence. Although we question the appropriateness of the trial court's ruling, in view of the long recognized exception to the hearsay rule allowing admission of the early complaints of rape victims,[6] defendant's specification of error is without merit.

ASSIGNMENT OF ERROR NUMBER 7
The defendant alleges, in this specification of error, that the court erred when it denied his motion to suppress a confession given by then juvenile, Reginald Handley, on the day of his arrest.
Defendant urges that the more stringent three-prong test to determine voluntariness of a juvenile confession adopted by the Louisiana Supreme Court in State in the Interest of Dino, 359 So.2d 586 (La.1978), rather than the "totality of circumstances" test, should have been applied to the instant determination.[7] The State does not contend that the Dino standards were applied herein.
In State v. Collum, 365 So.2d 1272 (La. 1978), cert. den. 444 U.S. 882, 100 S.Ct. 171, 62 L.Ed.2d 111 (1979), the court held that Dino would affect only those cases in which trial began after June 15, 1978, the effective date of the Dino decision. In so holding, the court reasoned that in its impact on the law and police custodial interrogation, Dino may be likened to the United States Supreme Court decision in Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), in which the court made giving of certain warnings of rights an absolute prerequisite to the admissibility of an in-custody confession.
In finding that the Dino rule does not go to the very integrity of the fact finding process, the court relied on criteria formulated by the United States Supreme Court in Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966), wherein the retroactivity of the Miranda Rule, was limited to cases in which trial had begun prior to Miranda.[8]
In Jenkins v. Delaware, 395 U.S. 213, 89 S.Ct. 1677, 23 L.Ed.2d 253 (1969), the United *1249 States Supreme Court was called upon to decide whether Miranda standards for determining the admissibility of in-custody statements apply to post-Miranda retrials of cases originally tried prior to that decision. The court decided that Miranda does not apply to any retrial of a defendant whose first trial commenced prior to the effective date of that decision.
In the instant case, we are called upon to make a comparable decision with respect to Dino. In State v. Collum, supra, the court did not consider the applicability of Dino to retrials.[9] The issue simply was not presented.
In State v. Collum, supra, after considering the need to avoid unreasonably disrupting the administration of our criminal laws, the Louisiana Supreme Court selected the commencement of the trial as determinative. The point of reliance is critical because it determines the impact that newly articulated standards will have upon convictions obtained pursuant to investigatory and prosecutorial practices not previously proscribed.
This same concern for justifiable reliance of law enforcement officials upon pre-Dino standards militates against applying Dino to retrials thereby making an exception for defendant simply because he was afforded a post-Dino retrial for reasons wholly unrelated to admissibility of his confession. Such an application would place a much heavier burden upon prosecutors to compensate for the inadmissibility of incriminating statements obtained pursuant to practices not previously proscribed.
Thus, because of the increased evidentiary burden that would be placed unreasonably upon law enforcement officials by insisting that Dino be applied to retrials, and for all the reasons articulated by the Louisiana Supreme Court in State v. Collum, supra, for not applying Dino retroactively, we hold that Dino does not apply to defendant's confession, taken on April 26, 1973, and offered into evidence at the instant trial which commenced on November 8, 1983.
Although defendant testified that he did not confess to the crime, his testimony was refuted by the testimony of several police officers. All of the circumstances support a finding of a free and voluntary confession. Defendant was no stranger to police procedures or contact with law enforcement authorities, having been arrested on suspicion of armed robbery some two weeks prior to the instant arrest. He was arrested in his girlfriend's presence, some two blocks from his home. After defendant was given his Miranda rights and after arriving at the police station, he gave a brief oral confession. The initial interrogation lasted about fifteen minutes. Thereafter, he was placed in a cell to rest for the night.
The following morning defendant appeared in court and conversed with an assistant public defender. Defendant was again advised of his rights, but chose to give a more detailed taped confession to law enforcement officers.
The trial judge's ruling on the voluntariness of defendant's confession is assigned great weight. State v. Ross, 343 So.2d 722 (La.1977).
Accordingly, in view of our holding with respect to the inapplicability of Dino to the instant case and the trial court's determination that the confession was otherwise free and voluntary, we find that the issue of admissibility was properly resolved by the trial court.

ASSIGNMENT OF ERROR NUMBER 13
The defendant also alleges that the prosecutor made improper comment in his closing argument to the jury. The prosecutor made brief reference to the hearing conducted outside the presence of the jury to determine the admissibility of defendant's confession.
*1250 In his reasons for objection, defense counsel argued that such comment defeats the purpose of conducting the hearing out of the presence of the jury. Of course, the primary purpose of trying a motion to suppress out of the presence of a jury is to obviate grounds for mistrial if the trial judge decides that the confession is inadmissible.[10]
In the instant case, the confession was properly admitted; and the trial judge cautioned the jury that prosecutor's argument should not be considered as evidence. Further, the jury was otherwise aware of its role in determining the weight, if any, to be given defendant's confession when reaching a verdict. Before a verdict will be overturned on the basis of improper argument, this court must be thoroughly convinced that the jury was influenced by the remarks and that they contributed to the verdict. State v. Carthan, 377 So.2d 308 (La.1979). We find the argument did not prejudice the defendant.
Assignment of error number thirteen lacks merit.

ASSIGNMENT OF ERROR NUMBER 14
Defendant contends that the trial court erred when it accepted a verdict contrary to the law and/or the evidence. This argument has no merit since a trial judge is not empowered with the discretion to accept or reject a verdict of the jury, unless the verdict does not comply with the form and/or procedural requirements. See La. Const. art. I, § 17 (1974) and La.Code Crim.P. arts. 809-820. State v. Oliney, 430 So.2d 1294 (La.App. 1st Cir.1983).
However, since defendant has argued sufficiency of evidence under this assignment of error, we will address that contention.
In cases where there is direct evidence or direct and circumstantial evidence, before we will reverse a guilty verdict on review, we must be convinced that no rational trier of fact could conclude that defendant's guilt had been proven beyond a reasonable doubt, when the evidence is viewed in a light most favorable to the state. La.Code Crim.P. art. 821; State v. Buchanan, 439 So.2d 576 (La.App. 1st Cir. 1983).[11] Applying this standard to the instant case, we conclude that the evidence is sufficient and supports the conviction.
In the instant case, the defendant's guilt was proven by both direct and circumstantial evidence. The most damaging evidence was the defendant's confession to the crime related at trial by Detective Gil, who had taken the confession.[12] The defendant stated that he and two companions were walking on Eugene Street when they spotted the elderly female victim sitting in her living room. The defendant, armed with a pistol, and his two companions entered the victim's home and forced her to give them money from her piggy bank. Thereafter, the men began to search the house for more money and other items of value. One of the other men took the victim into her bedroom, beat her about the head and raped her. Thereafter, the defendant forced the victim to submit to intercourse with him also. After further ransacking the house, finding the victim's watch and some coins, the defendant and *1251 his two companions left in the victim's automobile, which was later found abandoned nearby.
Photographs of the victim, introduced at trial showed that the victim had suffered a beating. Photographs of the victim's bedroom, introduced at trial, showed a bloody pillowcase on the floor and the otherwise ransacked room. Foundation for the photographs was laid by Sergeant Cantu, who testified that he arrived at the victim's home about 10 minutes after her call to police.
The coroner, Dr. Landry, testified that his examination of the victim revealed results consistent with forced sexual intercourse. The victim had lacerations of the scalp, was in a nervous state and had a large amount of blood in her vagina, along with the presence of spermatazoa.
The victim was deceased at the time of the trial. As noted above, her watch stolen during the incident was found under defendant's mattress and her car keys were found on defendant's person at the time of arrest.
Thus the evidence adduced at trial corroborated in every detail the confession of the defendant. A rational trier of fact could not form a hypothesis which could conclude anything other than the defendant's guilt. Certainly, the state met its burden of establishing defendant's guilt beyond a reasonable doubt.
This assignment of error is meritless.
Therefore, the defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] Defendant was indicated by the grand jury as a juvenile of sixteen years of age charged with a capital offense. La.R.S. 13:1570A(5).
[2] On July 24, 1980, Reginald Handley filed a petition for post conviction relief in the Nineteenth Judicial District Court for the Parish of East Baton Rouge claiming that his plea of guilty had been involuntarily and unintelligently entered and that he had been denied effective assistance of counsel. Defendant's application was dismissed on July 6, 1981; writs were denied at State ex rel Handley v. Blackburn, 412 So.2d 607 (La.1982).

Defendant thereafter filed an application for federal writ of habeas corpus (No. 82-441-B of the United States District Court for the Middle District of Louisiana) alleging the same grounds for relief.
The federal district court found that defendant's claim that he had been advised that after ten years and six months he would be eligible for release on parole if he pled guilty was supported by the record. When in fact, the law in effect at the time Handley pled guilty (La.R.S. 15:572) required that the governor commute a life sentence to a specific number of years before a defendant could be eligible for parole. Relying on Hayes v. Maggio, 699 F.2d 198 (5th Cir.1983), the federal district court granted Handley's application for writ of habeas corpus. The State of Louisiana was ordered to grant Handley a parole hearing or to vacate his guilty plea and try him within 120 days. The latter option was chosen by the State.
[3] The offense of which defendant was convicted occurred on April 3, 1973. It is well settled that a defendant is to be tried under the statute in effect at the time of the commission of the crime. The death penalty sentencing provision for aggravated rape in effect on April 3, 1973 was declared unconstitutional in Selman v. Louisiana, 428 U.S. 906, 96 S.Ct. 3214, 49 L.Ed.2d 1212 (1976). However, from July 26, 1972 (effective date of Acts 1972, No. 502) to July 2, 1973 (effective date of Acts 1973, no. 125) La. Code Crim.P. art. 817, as amended by Acts 1972, No. 502, provided in pertinent part:

Art. 817. Qualifying verdicts in capital and noncapital cases:
"In a capital case the jury may qualify its verdict of guilty as follows:
(1) With the addition of the words `without capital punishment,' in which case the punishment shall be imprisonment at hard labor for life, or
(2) With the addition of the words, `without capital punishment or benefit of parole, probation, commutation or suspension of sentence,' in which case the punishment shall be imprisonment at hard labor for life without benefit of parole, probation, commutation or suspension of sentence."
Accordingly either imprisonment at hard labor for life or imprisonment at hard labor for life without benefit of parole, probation, commutation or suspension of sentence would have been an appropriate sentence on this guilty verdict.
[4] The source of La.Code Crim.P. art. 799 is former La.R.S. 15:354; Acts 1966, No. 310 § 1. La. Const. art. I, § 17 (1974) is based in pertinent part on La. Const. art. I, § 10 (1921), the constitutional provision reviewed in State v. Sharp, 174 La. 860, 141 So. 859 (1932).
[5] See, memorandum in support of application for post conviction relief at page 4.

See, also, memorandum in support of federal application for writ of habeas corpus at page seven. (Vol. II).
[6] When there is no unexplained lapse of time between the rape and the victim's complaint, and when the utterance is spontaneous, the person to whom the complaint was made is allowed to repeat the complaint in court. State v. Elzie, 351 So.2d 1174 (La.1977); State v. Hunter, 340 So.2d 226 (La.1976). This exception is actually a special form of the res gestae or spontaneous declaration exceptions to the hearsay rule.
[7] By the Dino decision, the court ruled that a confession of a person under seventeen years of age is not admissible unless the juvenile actually consulted with an attorney or an adult before waiving his right to silence; that the attorney or adult consulted was interested in the welfare of the juvenile; and if an adult other than an attorney is consulted, the adult also must be fully advised of the rights of the juvenile.

Prior to the Dino decision, the "totality of circumstances" test was well accepted in Louisiana as a basis for deciding whether a juvenile had knowingly and intelligently waived his right. State v. Hills, 354 So.2d 186 (La.1977); State v. Hall, 350 So.2d 141 (La.1977); State v. Ross, 343 So.2d 722 (La.1977).
[8] The three criteria formulated for deciding the retroactivity issue:

1) the purpose of the new rule;
2) the reliance which may have been placed upon prior decisions on the subject; and
3) the effect on administration of justice of a retroactive application.
State v. Collum, 365 So.2d at 1275.
[9] The term retrial is used herein to refer to a subsequent trial of a defendant whose original trial for the same conduct commenced, or guilty plea which resulted in conviction was entered, prior to June 15, 1978, the day on which Dino was announced.
[10] See, La.Code Crim.P. art. 703; La.Code Crim.P. art. 794, Official Revision Comment (b).
[11] La.R.S. 15:438 provides:

The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.
[12] La.R.S. 15:450 mandates that every confession, admission or declaration sought to be used against any one must be used in its entirety, so that the person to be affected thereby may have the benefit of any exculpation or explanation that the whole statement may afford. Nevertheless, in the absence of proof to the contrary, the fact that the purported statement of the accused as testified to by the investigating officer does not consist of verbatim reiteration of the conversation between them, due to the witness' inability to recall or other valid explanation, the rights of the accused under La.R.S. 15:450 are not violated. The law does not require the production of nonexistent portions of a confession or portions which cannot be recalled. State v. Marmillion, 339 So.2d 788 (La.1976).