498 So.2d 244 (1986)
STATE of Louisiana
v.
Lawrence PRICE.
No. KA 86 0377.
Court of Appeal of Louisiana, First Circuit.
November 12, 1986.
*245 Bryan Bush, Dist. Atty., Office of the Dist. Atty., Office of the District Attorney, Baton Rouge by Louis R. Daniel, Asst. Dist. Atty., for plaintiff-appellee.
Robert J. Roux, Appellate Counsel, Office of Public Defender, Alton T. Moran, Director, Baton Rouge, for defendant-appellant.
Before EDWARDS, WATKINS and LeBLANC, JJ.
*246 WATKINS, Judge.
Defendant appeals his conviction of the second degree murder of his common-law wife. For the reasons below, we affirm the conviction.

FACTS
The crime arose from a domestic dispute in Baton Rouge, Louisiana on June 15, 1983. At some point in the morning, the defendant, Lawrence Price, and Patricia Fountain, the fourteen-year-old daughter of the victim, got into an argument. Patricia claimed that Price intentionally dropped a clothes drawer on her; he claimed it was done accidentally. As a result, Patricia struck defendant with a plastic bottle and he slapped or hit her in return. Patricia and her mother, Gertrude Williams, then walked to a neighbor's house and called the Baton Rouge Police. They stayed at the neighbor's house to talk and returned to their house in five to ten minutes. Patricia and Ms. Williams saw the defendant leaving in his car, but after speaking with Ms. Williams, the defendant returned to the house.
Officer Gerard Bloom was the first policeman to arrive. He went to the door and asked the defendant if he had called the police. Officer Brad Conrad arrived shortly thereafter. Ms. Williams and Patricia came out onto the front porch and Ms. Williams said that she had called. Officer Bloom took defendant's statement first, and defendant stated that he had accidentally hit Patricia with the dresser drawer, that she threw a plastic bottle of hand lotion at his face, and that he then slapped her. Officer Bloom then attempted to take Patricia's statement but was interrupted by Ms. Williams who told Bloom that she wanted Price to "pack his things and get out". At that moment Price pulled out a gun, which had been concealed under his shirt, pointed it at Ms. Williams, who was two to three feet away, stepped towards her, and fired. The shot passed through the victim's right wrist, which she had raised to protect herself, and into her neck. Bloom and Conrad tackled Price and the gun fell to the floor. Price resisted and tried to break free, and was able to remove Officer Conrad's gun from its holster before Conrad kicked it from Price's hand. The officers subdued Price, and placed him under arrest. Ms. Williams died of the gunshot wound a short time later.
Defendant was indicted for the second degree murder of Gertrude Williams, in violation of LSA-R.S. 14:30.1. After a trial by jury, he was convicted as charged, and was subsequently sentenced to life imprisonment at hard labor without benefit of probation, parole, or suspension of sentence. Defendant appealed, presenting six assignments of error. (Assignments of error two and four were not briefed on appeal and are, therefore, considered abandoned. Uniform RulesCourts of Appeal, Rule 2-12.4.)

SUFFICIENCY OF EVIDENCE

(Assignments of Error Numbers One, Three and Six)
By these assignments of error, defendant submits the evidence is insufficient to support the verdict. In assignment of error number one, defendant argues the trial court erred when it denied defendant's motion for a judgment notwithstanding the verdict (post-verdict judgment of acquittal). In assignment of error number three,[1] defendant argues the trial court erred by denying his motion for a new trial. In assignment of error number six, defendant argues the evidence does not support the verdict.
Second degree murder is the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. LSA-R.S. 14:30.1. (1). Manslaughter is a homicide which would be either *247 first or second degree murder, but is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self control and cool reflection. LSA-R.S. 14:31(1). Defendant contends the state did not prove he had the specific intent to kill or inflict great bodily harm, and thus, he should have been convicted only of manslaughter.
In reviewing the sufficiency of the evidence to support a conviction, an appellate court in Louisiana is controlled by the standard enunciated by the United States Supreme Court in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). That standard, adopted by the Legislature in enacting LSA-C.Cr.P. art. 821 (which pertains to post verdict motions for acquittal based on insufficiency of evidence,) is that the appellate court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt. State v. Korman, 439 So.2d 1099, 1100 n. 1 (La.App. 1st Cir.1983).
Specific intent is defined as the state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. LSA-R.S. 14:10(1). Specific intent is a legal conclusion to be resolved ultimately by the trier of fact. State v. Washington, 484 So.2d 946, 950-951 (La.App. 1st Cir.1986). Since specific intent is a state of mind, it need not be proved as a fact, but may be inferred from the circumstances present and the actions of the defendant. LSA-R.S. 15:445; State v. Washington, 484 So.2d at 951.
When circumstantial evidence is used to prove the commission of the offense, LSA-R.S. 15:438 mandates that, "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." This is not a purely separate test from the Jackson sufficiency standard to be applied instead of a sufficiency of the evidence test whenever circumstantial evidence forms the basis of the conviction. Ultimately, all evidence, both direct and circumstantial, must be sufficient under Jackson to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt. Due process requires no greater burden. State v. Rosiere, 488 So.2d 965, 968 (La.1986).
From the facts previously related, we find that a rational juror could have inferred that defendant possessed the specific intent to kill or inflict great bodily harm upon the victim. At some point during the morning, defendant concealed a gun on his person. He drew this weapon, aimed it at the victim, who was standing less than three feet away, stepped toward her, and fired a shot which passed into the victim's neck. The shot was fired close enough to leave powder burns on both the victim and her daughter. Defendant then struggled with two police officers, possibly attempting to regain his own weapon, and successfully grabbed Officer Conrad's service revolver. Defendant's actions clearly evidence his intent, at a minimum, to inflict great bodily harm upon the victim. Defendant attempts to distinguish the circumstances of this shooting from other situations in which specific intent was inferred either from multiple actions of the defendant or from actions in conjunction with other criminal activity. Under the circumstances, it could reasonably be inferred, from the fact that defendant shot the victim in the neck at close range, that he actively desired her death to follow his act. See State v. Boyer, 406 So.2d 143, 150 (La.1981).
By his motion for a new trial, defendant argues that the evidence supported only a conviction of manslaughter, because the homicide was committed in "sudden passion" or "heat of blood". Specifically, defendant alleges that the evidence established that the shooting took place after an argument with the victim concerning another man.
*248 The presence of "sudden passion" or "heat of blood" distinguishes manslaughter from murder. "Sudden passion" and "heat of blood" are not elements of the offense of manslaughter; rather, they are mitigating factors in the nature of a defense which exhibits a degree of culpability less than that present when the homicide is committed without them. State v. Lombard, 486 So.2d 106, 111 (La.1986).
It is undisputed that the homicide occurred immediately after the victim requested defendant to remove his belongings from the house. However, the record does not support defendant's allegation that he shot the victim in a sudden passion caused by the victim's threat to leave defendant for another man. Defendant's testimony at trial indicates that he was experiencing mental difficulties on the date of the homicide and that he did not know how the shooting had occurred. Represented by new counsel, defendant also testified at the hearing on his motion for a new trial and never mentioned the possibility that his mental state could have been affected by the fact that the victim might have been involved with another man. The only reference to this possibility was made by the attorney who represented defendant at trial, who testified that the victim had been shot once before and that shooting might have been done by a man named Willie Holmes. Trial counsel further noted that the victim might have been making preparations to leave defendant for Holmes. The trial court obviously found, and we agree, that the possibility that defendant's actions were influenced by the victim's involvement with another man was too remote to affect the verdict.
Although the evidence did establish that defendant and the victim had engaged in an argument earlier on the day of the shooting, the police officers testified that the situation had calmed by the time defendant fired the fatal shot. In light of this testimony and the evidence previously set forth, we find no error in the trial court's denial of defendant's motions for a post-verdict judgment of acquittal and new trial.

INEFFECTIVE ASSISTANCE OF COUNSEL

(Assignment of Error Number Five)
By assignment of error number five, defendant submits the trial court denied him due process of law by convicting him without effective assistance of counsel.
Initially, we note that a trial court has the discretion to accept or reject a verdict of the jury only if the verdict does not comply with the form or procedural requirements. See, La. Const. art. I, § 17 (1974); LSA-C.Cr.P. arts. 809-820; State v. Handley, 453 So.2d 1242, 1250 (La.App. 1st Cir.), writ denied, 457 So.2d 1199 (La.1984). Since defendant apparently intended to raise the issue of ineffective assistance of counsel and has briefed that issue, we will consider the merits of his argument as though it had been effectively urged.
A claim of ineffective counsel is more properly raised by an application for post conviction relief in the district court where a full evidentiary hearing may be conducted. State v. Bourgeois, 451 So.2d 172, 174 (La.App. 1st Cir.), writ denied, 457 So.2d 18 (La.1984). Where the record discloses evidence needed to decide the issue of ineffective assistance of counsel and that issue was raised by assignment of error on appeal, the issue may be addressed in the interest of judicial economy. Id.
The United States Supreme Court has established a two-part test for review of a convicted defendant's claim that his counsel's assistance was so defective as to require reversal of a conviction [or death sentence]. In Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the court stated:
First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that *249 the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.
Strickland, 104 S.Ct. at 2064.
Defendant submits that his trial counsel was ineffective in failing to pursue his defense of manslaughter. He argues that trial counsel should have further pursued the subject of the emotional difficulties which required defendant to leave work earlier in the day and the possibility that the victim was planning to leave defendant for another man.
Defendant took the stand on his own behalf at trial and during the hearing on his motion for a new trial. As previously noted, on neither occasion did he mention the possibility that his emotional state was caused by problems with his personal relationship with the victim. Evidence of defendant's mental condition was presented at the trial on the merits. Defendant testified that he left work because he was nervous and tense, that he had never experienced this condition before, and that he was on his way to his brother's home for assistance in seeking medical care when the victim and her daughter returned after calling the police. He testified he had no recollection of the actual events of the shooting. At the hearing on the motion for a new trial, he claimed his trial counsel was ineffective because he did not summon witnesses who could have testified about his emotional state while he was at work earlier in the day.
Defendant's employer testified at trial and indicated that defendant was requested to leave work because of his mental or emotional disturbance. Since defendant did not obtain medical treatment, no expert evidence could be presented to show the cause or nature of his problem. In light of the testimony of defendant's employer and the nebulous description of his medical problem, it is doubtful that the evidence defendant wished to present would have affected the verdict. It is apparent that all of the information that could be obtained relative to defendant's condition was presented to the jury.
Moreover, we have previously considered and rejected defendant's argument that he was guilty only of manslaughter. Having found no merit to this argument, any claim that defendant's counsel was ineffective for failing to present it is obviously without merit.
Defendant further contends that his counsel's ineffective performance was illustrated by counsel's failure to object when Officer Bloom twice referred to defendant's gun as the "murder weapon". Although counsel did not object, the court instructed the witness to watch his language, and instructed the jury not to draw any conclusions from Officer Bloom's description of the gun. The officer did not use the phrase thereafter. We do not consider this failure to object to be a professionally unreasonable error, considering its minimal impact on the proceedings as a whole. This assignment of error has no merit.
AFFIRMED.
NOTES
[1] Defendant states in brief that this error was assignment of error number two. It was actually his third assignment of error. Similarly, defendant briefs assignment of error number four as "the verdict was contrary to the law and the evidence"; this error was designated in the record as his sixth assignment.