612 So.2d 183 (1992)
STATE of Louisiana
v.
Charles WALLACE.
No. 92 KA 0167.
Court of Appeal of Louisiana, First Circuit.
December 23, 1992.
Writ Denied March 26, 1993.
*184 William R. Campbell, Jr., New Orleans, Paul L. Katz, Asst. Dist. Atty., Covington, for appellee.
James H. Looney, Office of Indigent Defender, Covington, for appellant.
Before LOTTINGER, C.J., and FOIL and FOGG[*], JJ.
KENNETH J. FOGG, Judge Pro Tem.
The defendant, Charles Wallace, was charged by grand jury indictment with second degree murder, a violation of LSA-R.S. 14:30.1. He pled not guilty and, after trial *185 by jury, was found guilty as charged. Wallace received the mandatory sentence of life imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence. He has appealed, alleging six assignments of error, as follows:
1. The trial court erred in failing to have the jurors sworn together as a group.
2. The trial court erred in allowing irrelevant and prejudicial evidence to be admitted at trial.
3. The trial court erred in denying the defendant's motion for a mistrial when the State's representative violated the sequestration order by conferring with the State witnesses.
4. The trial court erred in denying the defendant's motion for a mistrial when the prosecutor made an improper remark during closing argument.
5. The trial court erred in denying the defendant's motion for a new trial.
6. The evidence was insufficient to support the instant conviction.

FACTS
During the early morning hours of October 28, 1990, the victim, Darrell Crawford, drove to a trailer at the intersection of Carroll and Dubuisson Roads in Slidell, Louisiana. James Earl owned the car driven by the victim and was riding in the front passenger seat. Another passenger, Earlean Thompson, was riding in the back seat. The trailer was owned by Jessie Butler, Sr., and occupied by his son, Jessie Butler, Jr., and Wallace. Apparently, the victim intended to purchase some cocaine from Jessie Butler, Jr. The victim exited the car and engaged in a lengthy conversation with Butler, who informed the victim that he did not have any cocaine. Butler finally withdrew from the conversation, entered his trailer, and shut the door. When the victim persisted in his attempt to converse with Butler, Wallace shot the victim in the chest with a Russian Tokarev .762 mm pistol owned by Butler.
James Earl and Earlean Thompson drove the victim to a nearby hospital, but he died shortly thereafter. Subsequent tests revealed that the victim was legally intoxicated and under the influence of cocaine at the time of his death. Meanwhile, Wallace and Butler fled the scene and were arrested the following day in the parking lot of the Ozone Motel in Mandeville, Louisiana. After his arrest, Wallace admitted shooting the victim with the .762 mm pistol in his possession. He also made several other inculpatory statements before requesting to consult with his attorney. Ballistics tests performed on a bullet recovered from the engine of a red Firebird parked at the trailer revealed that the bullet had been fired from the .762 mm pistol.
Wallace did not testify at the trial. However, the defense characterized the shooting as a justifiable homicide, based on the theory that Wallace shot the victim to prevent his unlawful entry into the trailer. Jessie Butler, Jr., the only defense witness, testified that he heard a sound immediately before the shooting which could have been a "snatch" of the door lock. However, State witnesses James Earl and Earlean Thompson both testified that the victim never attempted to enter the trailer and was standing on the ground when the Wallace shot him.
ASSIGNMENT OF ERROR NO. ONE:
In this assignment of error, Wallace contends that the trial court erred in failing to have the jury sworn together as a group.
Former La.C.Cr.P. art. 790 provided:
A juror shall be sworn to try the case in a just and impartial manner, to the best of his judgment, and to render a verdict according to the law and the evidence.
Article 790, as amended by Act 524, § 1, of 1990, now provides:
When selection of jurors and alternate jurors has been completed, and all issues properly raised under Article 795 have been resolved, the jurors shall then be sworn together to try the case in a just and impartial manner, each to the best of his judgment, and to render a verdict according to the law and the evidence. *186 La.C.Cr.P. art. 795 also was amended in 1990 by Acts 547, § 1, and 713, § 1. These amendments to Articles 790 and 795 were an obvious response by the legislature to the problems associated with allegations of racially motivated peremptory challenges. See Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Initially, we note that no such issue was presented herein, since no Batson objections were entered during voir dire. Nevertheless, Wallace is correct in his assertion that the jurors were not sworn together. Voir dire examination was conducted on July 22, 1991. Nine jurors were selected and sworn from the first panel of prospective jurors. From the second panel of prospective jurors, the remaining three jurors and one alternate were selected and sworn. However, neither at voir dire examination nor during the trial did Wallace enter an objection on this basis. See La.C.Cr.P. art. 841. In State v. Hoover, 203 La. 181, 13 So.2d 784, 787 (1943), the Louisiana Supreme Court stated that defects in the swearing of the jury could not be raised for the first time in a motion for a new trial. In the instant case, Wallace has raised this issue for the first time on appeal. Accordingly, we find that, in the absence of a contemporaneous objection, the error in failing to swear the jury together was waived.
Furthermore, because we reject the Wallace's assertion of prejudice, we find that, under the circumstances presented herein, this error in failing to swear the jury as a group was harmless beyond a reasonable doubt. La.C.Cr.P. art. 921. Wallace correctly notes that a peremptory challenge can be exercised at any time prior to the swearing of the jury panel. La. C.Cr.P. art. 795 B(1); State v. Watts, 579 So.2d 931 (La.1991). Wallace also notes that he had exercised only eight peremptory challenges and, therefore, he contends that he had four remaining peremptory challenges to exercise at any time, since the jury was never properly sworn together as required by Article 790. However, Wallace never attempted to exercise these remaining peremptory challenges, nor does he now contend that he actually wished to do so.
For the above reasons, this assignment of error is without merit.
ASSIGNMENT OF ERROR NO. TWO
In this assignment of error, Wallace contends that the trial court erred in allowing irrelevant and prejudicial evidence to be admitted at trial. Specifically, he contends that a machine pistol and two ammunition clips were irrelevant and, therefore, improperly introduced into evidence over his objections. Wallace also objected to the introduction of photographs of, and trial testimony relating to, these exhibits. All of the relevancy objections to the above evidence were overruled by the trial court.
La.Code of Evidence art. 401 provides:
"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.
La.Code of Evidence art. 403 provides:
Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time.
Evidence introduced at the trial established that Wallace was distributing cocaine. According to Jessie Butler, Jr., the victim, Darrell Crawford, was attempting to purchase some cocaine when the shooting occurred. Several hours after the shooting, Jessie Butler, Sr., who was the owner of the trailer where the shooting took place, consented to a search of the premises. Inside the trailer, police officers discovered drug paraphernalia which indicated that the occupants had been "cooking" cocaine. On October 29, 1990, the day after the shooting occurred, Wallace and Jessie Butler, Jr., were arrested while seated in the defendant's car at a motel in Mandeville. Wallace was armed with the murder weapon, a Russian Tokarev .762 mm pistol. Butler had an Intratec .9 mm machine pistol concealed in his waistband. One ammunition clip was inside the pistol and another was located in his pocket. A *187 packet of cocaine was discovered on the passenger side floorboard of the vehicle.
It is a well known fact that persons who traffic in illegal narcotics frequently carry weapons. On the other hand, only one of these two weapons, the .762 mm pistol was established as the murder weapon. Wallace contends that the machine pistol, as well as all of the physical evidence and testimony associated with it, was irrelevant and prejudicial. In his brief to this Court, he states:
The apparent purpose of the introduction of the machine pistol and repeated references thereto was to inflame the emotions of the jurors. It had the effect of portraying the defendant as a bad person, one who would carry or use such a weapon. This is especially so in light of the testimony of the firearms examiner that these weapons are now being commonly seen and that some are converted to fully automatic and thereby illegal use. (Defendant's brief p. 8).
For the following reasons, we find that the machine pistol (and all of the other evidence related to it) had some relevance to the instant case. At trial, Wallace relied on the defense of justification, as provided in LSA-R.S. 14:20(4). However, as noted in our treatment of assignment of error number six, after the shooting occurred, Wallace and Butler fled the scene. Such flight was not consistent with a defense of justification. If Wallace had shot the victim in an attempt to prevent a forcible entry into the trailer, it would be reasonable to assume that he immediately would have notified the police or, at least, remained at the trailer until someone else notified them. Instead, he and Butler armed themselves, fled the scene, and were arrested the following day at a motel in Mandeville. Furthermore, it could be argued that the fact that both men were in possession of weapons and cocaine negates Wallace's explanation to the police at the time of his arrest that he and Butler were "trying to decide how to turn ourselves in." Therefore, while admittedly a close issue, we find that the probative value of the machine pistol (and the other evidence related thereto) passed the balancing test provided in Article 403.
In any event, even if the machine pistol and the other related evidence should not have been introduced at the trial, we find no prejudice to Wallace. This Court will not set aside a conviction in a criminal case on the ground of improper admission of evidence unless, in the opinion of the Court, after an examination of the entire record, it appears that the error complained of has prejudiced the defendant. State v. Thompson, 489 So.2d 1364, 1373 (La.App. 1st Cir.), writ denied, 494 So.2d 324 (La. 1986). After his arrest, Wallace admitted that he had used the Tokarev pistol to shoot the victim. The bullet recovered from the engine of the red Firebird parked at the trailer was matched to State Exhibit 11 by ballistics expert Otho Stubbs. Both pistols belonged to Jessie Butler, Jr., and there was no evidence that Wallace ever used or possessed the machine pistol. Finally, while Otho Stubbs testified that similar machine pistols could be modified to automatic weapons, State Exhibit 14 had not been so modified. Considering the above, we find that any error in introducing the machine pistol and the other evidence related thereto was not prejudicial and, therefore, was harmless beyond a reasonable doubt. La.C.Cr.P. art. 921.
For the above reasons, this assignment of error is without merit.
ASSIGNMENT OF ERROR NO. THREE
In this assignment of error, Wallace contends that the trial court erred in denying his motion for a mistrial when the State's representative violated the sequestration order by conferring with two State witnesses.
The purpose of sequestration is to assure that a witness will testify as to his own knowledge of the events, to prevent the testimony of one witness from influencing the testimony of others, and to strengthen the role of cross-examination in developing facts. State v. Revere, 572 So.2d 117, 125 (La.App. 1st Cir.1990), writ denied, 581 So.2d 703 (La.1991). The resolution of sequestration problems is within *188 the sound discretion of the trial court. State v. Ondek, 584 So.2d 282, 298 (La. App. 1st Cir.), writ denied, 586 So.2d 539 (La.1991). On appeal, the reviewing court will look at the facts of each case to determine whether or not a sequestration violation resulted in prejudice to the accused. State v. Lopez, 562 So.2d 1064, 1066 (La. App. 1st Cir.1990).
Robert Champagne, an investigator from the District Attorney's Office, was designated as the State's representative. See La.Code of Evidence art. 615 A(2). In fact, the prosecutor and defense counsel stipulated to the appointment of Mr. Champagne as the State's representative since he had received all of the evidence to be introduced at the trial from the evidence officer, Lt. David Bulloch of the St. Tammany Parish Sheriff's Office, who was unavailable for trial. During the trial, the defense made a motion for a mistrial on the basis that Mr. Champagne had been observed talking to two State witnesses, Milton Wilson and Michael Ferrier, in violation of the court's sequestration order. However, Mr. Champagne testified that, while he had spoken to these two men during the trial, he had not discussed the facts of the case with them, nor had he informed them of the testimony of other witnesses. Mr. Champagne testified that when Mr. Ferrier and Mr. Wilson had asked him if they had to remain at the courthouse for the duration of the trial, he informed them that they did have to remain because they were under subpoena and might be called to testify. Additionally, on one occasion, he was asked by both men if the State was going to buy their lunch.
The trial court ruled that, as the State's representative, Mr. Champagne was exempted from the sequestration order and denied the motion for a mistrial on this basis. However, while Mr. Champagne was allowed to remain in the courtroom as the State's representative, he was not an attorney and, arguably, was not permitted to speak with witnesses during the trial. Nevertheless, although it is not entirely clear from the record, it appears that Mr. Champagne's brief conversations with these two witnesses occurred after their trial testimony and neither witness was recalled to testify after these technical violations of the sequestration order took place. In any event, as noted above, since Mr. Champagne did not discuss the facts of the case with Mr. Ferrier or Mr. Wilson, nor did he inform them of the testimony of other witnesses, Wallace could not have been prejudiced and, therefore, he was not entitled to a mistrial.
This assignment of error is without merit.
ASSIGNMENT OF ERROR NO. FOUR
In this assignment of error, Wallace contends that the trial court erred in denying his motion for a mistrial based on an improper remark made by the prosecutor during closing argument. Specifically, he contends that the prosecutor improperly referred to his post-arrest silence.
In Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), the United States Supreme Court held that a prosecutor may not seek to impeach a defendant's exculpatory story, told for the first time at trial, by cross-examining him about his failure to have told the story after receiving Miranda warnings at the time of his arrest. The Supreme Court concluded that the use of a defendant's post-arrest silence violates due process.
During his closing argument, the prosecutor stated the following:
PROSECUTOR:
Officer Nores, Officer Boehm told you that when Charles Wallace came back to the jail he said, I shot that bastard and I'd shoot all of them if you gave me a chance. Your hands are tied, but mine are not. What bastards is he talking about? I asked him. Blacks. Same thing Jeff Boehm said. Now, if there were a legitimate self-defense issue, it didn't come out in what he told the police at that time.
DEFENSE COUNSEL:
Objection, Your Honor. Move for a mistrial.
At the trial, the testimony of several police officers indicated that Wallace made *189 some inculpatory statements after being advised of his Miranda rights. Therefore, he obviously did not immediately exercise his right to remain silent. Subsequently, when asked if he would consent to a taped statement, he then declined and requested to speak with his attorney before making any further statements. While Wallace did not testify at the trial, the defense theory of the case asserted at trial was that Wallace was justified in shooting the victim under LSA-R.S. 14:20(4). The prosecutor's remarks quoted above clearly refer to the inconsistency between the defense asserted at trial (justification) and Wallace's inculpatory statements. As such, the prosecutor's closing argument did not violate Doyle. See Anderson v. Charles, 447 U.S. 404, 100 S.Ct. 2180, 65 L.Ed.2d 222 (1980); State v. Jones, 490 So.2d 613, 615 (La.App. 2d Cir.), writ denied, 495 So.2d 301 (La.1986). Because these remarks by the prosecutor focusing on Wallace's inculpatory statements were permissible under these circumstances, he was not entitled to a mistrial.
This assignment of error is without merit.
ASSIGNMENT OF ERROR NO. FIVE
In this assignment of error, Wallace contends that the trial court erred in failing to grant a new trial. Specifically, Wallace refers to the trial court's denial of his supplemental motion for a new trial, wherein he alleged that the prosecutor failed to provide exculpatory information relating to the suspension, and subsequent termination, of St. Tammany Parish Sheriff's Deputy Ronnie Frayle, who was in charge of the instant murder investigation. Wallace contends that Deputy Frayle's suspension and termination constituted newly discovered evidence entitling him to a new trial. According to Wallace, he was denied information which could have been used to impeach Deputy Frayle's testimony about an inculpatory statement made by the defendant.
In a motion for new trial based upon the discovery of new and material evidence, the burden is on the defendant to show that the new evidence was not discoverable prior to or during trial and that, if the evidence had been introduced at trial, it probably would have caused the trier of fact to reach a different verdict. La. C.Cr.P. art. 851(3); State v. Spears, 504 So.2d 974, 979 (La.App. 1st Cir.), writ denied, 507 So.2d 225 (La.1987). In evaluating whether or not the newly discovered evidence warrants a new trial, the test to be employed is not simply whether another jury might bring in a different verdict, but whether or not the new evidence is so material that it ought to produce a verdict different from that rendered at trial. State v. Spears, 504 So.2d at 979. Furthermore, the trial court's decision on a motion for new trial will not be disturbed absent a clear abuse of discretion. State v. Revere, 572 So.2d 117, 141 (La.App. 1st Cir.1990), writ denied, 581 So.2d 703 (La.1991).
We find no abuse of discretion by the trial court in denying Wallace's supplemental motion for a new trial. First, we question whether or not Deputy Frayle's suspension and termination constitute exculpatory evidence. The complete details surrounding the suspension and termination were not revealed at the hearing on the supplemental motion for a new trial. During the trial, the charge against Deputy Frayle was being investigated. Eventually, he was terminated by the Sheriff's Department for dishonesty, violation of departmental regulations, and because it was learned that the District Attorney's Office was going to file criminal charges against him. However, none of the above related to Deputy Frayle's involvement in the instant case; and, therefore, we fail to see how Deputy Frayle's suspension would have been relevant to the instant case or would have served to impeach his trial testimony. Next, we note that evidence of Deputy Frayle's suspension is not easily characterized as "newly discovered" because defense counsel conceded he was aware of Deputy Frayle's suspension and reinstatement at the time of the trial. Furthermore, defense counsel also conceded that the prosecutor was not aware of these facts. Finally, even if the evidence could have been characterized as exculpatory and newly discovered, Wallace failed to establish *190 that it was of such a character that it would probably produce an acquittal at a retrial. Accordingly, we find no error in the trial court's refusal to grant a new trial.
This assignment of error is without merit.
ASSIGNMENT OF ERROR NO. SIX
In this assignment of error, Wallace contends that the evidence is insufficient to support his conviction. He does not contest the fact that he shot and killed the victim. Instead, he argues that the State failed to prove that he did not commit a justifiable homicide.
The standard of review for the sufficiency of the evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude that the State proved the essential elements of the crime beyond a reasonable doubt. See La.C.Cr.P. art. 821; State v. King, 563 So.2d 449, 456 (La.App. 1st Cir.), writ denied, 567 So.2d 610 (La.1990).
LSA-R.S. 14:30.1 A(1) provides:
Second degree murder is the killing of a human being:
When the offender has a specific intent to kill or to inflict great bodily harm;....
Specific intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. LSA-R.S. 14:10(1). Specific intent may be proved by direct evidence, such as statements by a defendant, or by inference from circumstantial evidence, such as a defendant's actions or facts depicting the circumstances. State v. Johnson, 461 So.2d 1273, 1277 (La.App. 1st Cir.1984). The fact that Wallace shot the victim in the chest with a pistol at a fairly close range indicates a specific intent to kill or inflict great bodily harm. See LSA-R.S. 14:30.1(A)(1); State v. Price, 498 So.2d 244, 247 (La.App. 1st Cir.1986), writ denied, 503 So.2d 474 (La. 1987).
When justification is raised as an issue by the defendant, the State has the burden of proving, beyond a reasonable doubt, that the killing was not justified. State v. Matthews, 464 So.2d 298, 299 (La. 1985). Thus, the issue in this case is whether or not a rational fact finder, viewing the evidence in the light most favorable to the prosecution, could have found beyond a reasonable doubt that Wallace did not commit a justifiable homicide.
LSA-R.S. 14:20 provides, in pertinent part:
A homicide is justifiable:
(4) When committed by a person lawfully inside a dwelling against a person who is attempting to make an unlawful entry into the dwelling or who has made an unlawful entry into the dwelling and the person committing the homicide reasonably believes that the use of deadly force is necessary to prevent the entry or to compel the intruder to leave the premises. The homicide shall be justifiable even though the person committing the homicide does not retreat from the encounter.
Wallace did not testify at the trial. The only defense witness, Jessie Butler, Jr., testified that, immediately before the shooting occurred, he heard the victim say to the defendant: "F____ you and your gun." Butler testified that, after this exclamation by the victim, he "heard something sounded to me like a snatch. All right. Sounded like the door lock. But I was in the other room, I can't say what that was. Then I heard the shot." Butler did not actually see Wallace shoot the victim. However, based on Butler's testimony, and the fact that the bullet passed through the victim's body at a slightly downward angle, Wallace contends that the victim was attempting to force his way into the trailer and, therefore, he was justified in using deadly force to prevent this unlawful entry. Wallace notes the fact that the victim was legally intoxicated and under the influence of cocaine when the shooting occurred and suggests that the victim's persistence in attempting to purchase cocaine from Butler supports his theory that the victim actually attempted an unlawful entry of the trailer.
*191 However, two state witnesses, James Earl and Earlean Thompson, testified that the victim was standing on the ground, not on the steps, when the shooting occurred. Both witnesses testified that the victim never attempted to enter the trailer. According to these two witnesses, the victim's last words before the shooting were something to the effect that he was trying to talk business with Jessie Butler.
As the trier of fact, the jury was free to accept or reject, in whole or in part, the testimony of any witness. State v. Richardson, 459 So.2d 31, 38 (La.App. 1st Cir.1984). Furthermore, where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Richardson, 459 So.2d at 38. The unanimous guilty verdict returned in this case indicates that the jury rejected the defense theory of justifiable homicide. In our view, this guilty verdict was clearly supported by the evidence. Wallace's theory of justifiable homicide ignores both the law and the facts of this case. It is undisputed that the victim was not armed. In addition to Wallace and Butler, there were four other adult males also present inside the trailer at the time of the shooting (Michael Ferrier, Milton Wilson, George Sylvas, and Steve Simmons). While the justifiable homicide statute pertinent to this case contains a subjective test: "the person committing the homicide reasonably believes that the use of deadly force is necessary to prevent the entry," under the circumstances present herein Wallace could not possibly believe that the use of deadly force was necessary to prevent the victim's entry into the trailer. Furthermore, Wallace's actions after the shooting are also inconsistent with a theory of justifiable homicide. After the shooting occurred, he and Butler fled the scene and were arrested at a motel in Mandeville the following day.
Considering all of the above, we reject Wallace's theory that this homicide was justified. We have carefully reviewed the record and find that the evidence supports the jury's determination. We are convinced that a rational trier of fact, viewing all of the evidence as favorable to the prosecution as any rational fact finder can, could have concluded that the State proved beyond a reasonable doubt that Wallace was guilty of second degree murder and that this homicide was not justified.
This assignment of error is without merit.
PATENT SENTENCING ERROR
We have discovered a patent sentencing error. Neither the minutes nor the sentencing transcript show that the trial court, in imposing this sentence, gave the defendant credit for time spent in actual custody prior to sentencing. Such an allowance of credit is mandatory. La.C.Cr.P. art. 880. Patent sentencing error occurs when the trial court fails to specify credit for time served. State v. Greer, 572 So.2d 1166, 1172 (La.App. 1st Cir.1990). Accordingly, we find patent sentencing error and amend the sentence to reflect that the defendant is to be given credit for time served prior to the execution of his sentence. See La.C.Cr.P. art. 882 A. Resentencing is not required; however, we remand this case and order the district court to amend the commitment and minute entry of the sentence to reflect that the defendant is given credit for time served.
CONVICTION AND SENTENCE AFFIRMED AS AMENDED, AND REMANDED WITH ORDER.
NOTES
[*] Judge Kenneth J. Fogg is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.