623 So.2d 79 (1993)
STATE of Louisiana
v.
George PROBST, Jr.
No. 92 KA 1700.
Court of Appeal of Louisiana, First Circuit.
July 2, 1993.
*81 Charles S. Long, Asst. Dist. Atty., Donaldsonville, for the State.
Keith Nordyke, Baton Rouge, for defendant.
Before WATKINS, CRAIN and GONZALES, JJ.
CRAIN, Judge.
The defendant, George Probst, Jr., was charged by grand jury indictment with forcible rape, in violation of LSA-R.S. 14:42.1. He pled not guilty and, after trial by jury, was found guilty as charged. The defendant received a sentence of eight and one-half years at hard labor, without benefit of parole, probation, or suspension of sentence, with credit for time served. He has appealed, alleging twelve assignments of error, as follows:
Assignment of error number twelve was not briefed on appeal and, therefore, is considered abandoned. Uniform RulesCourts of Appeal, Rule 2-12.4.

FACTS
In the early evening hours of January 27, 1991, the defendant forcibly raped the victim, a forty-eight year old divorced female, at his home in Gonzales, Louisiana. The defendant and the victim had met approximately six weeks earlier at Floyd Brown's Lounge in Baton Rouge. Between this first meeting and the day of the instant offense, they dated or visited each other a few times, called each other on the telephone and, on one occasion *82 after they attended a movie together, they engaged in consensual oral sex at the defendant's home.
On the day the rape occurred, the defendant picked up the victim at her apartment and they went to church together. After church, they went to a grocery store, bought some groceries, drove to a movie rental store, rented a videotape, and returned to the defendant's house. They cooked a meal, ate, and watched the movie. The defendant actually fell asleep during this movie. When the movie ended, the victim woke the defendant, and he immediately grabbed her from behind, pinning her arms. He pushed her across the floor and into his bedroom. The victim tried to stop the defendant by dragging her feet and telling him to stop. Once they reached the bedroom, the defendant ripped off her pants and panty hose, began performing oral sex on her, and forced her to perform oral sex on him. He then got on top of the victim and had sexual intercourse with her. The victim did not try to resist or tell the defendant to stop once they reached the bedroom because she believed that he would not listen. In fact, she encouraged the defendant to hurry up and finish so that the ordeal would be over. Afterwards, the defendant took a shower and then drove the victim home.
The victim initially delayed in reporting this incident because she "felt shame," "felt scared," and she "thought [she] could handle it." A few days after the incident, after speaking with several female friends, the victim decided to call the Rape Crises Center. The victim then reported this incident to the authorities. Two sets of pictures were taken which depicted bruises on the victim's leg allegedly caused by the defendant during the rape.
When the defendant was arrested, he made a brief, oral statement admitting that he and the victim engaged in consensual oral sex and sexual intercourse on the date in question.
ASSIGNMENTS OF ERROR NOS. ONE, TWO, THREE, AND FIVE:
In these assignments of error, the defendant contends that the evidence was insufficient to support the instant conviction. He also contends that, on this basis, the trial court erred in denying his motion for new trial and motion in arrest of judgment. Initially, we note that, in order to challenge this conviction on the basis of insufficiency of the evidence, the defendant should have proceeded by way of a motion for post verdict judgment of acquittal. See La.C.Cr.P. art. 821. Nevertheless, we will consider a claim of insufficiency of the evidence which has been briefed pursuant to a formal assignment of error. See State v. Tate, 506 So.2d 546, 551 (La.App. 1st Cir.), writ denied, 511 So.2d 1152 (La.1987).
The standard of review for the sufficiency of the evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude that the State proved the essential elements of the crime beyond a reasonable doubt. See La. C.Cr.P. art. 821; State v. King, 563 So.2d 449, 456 (La.App. 1st Cir.), writ denied, 567 So.2d 610 (La.1990). The Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), standard of review incorporated in Article 821 is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, LSA-R.S. 15:438 provides that the fact finder must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. State v. McLean, 525 So.2d 1251, 1255 (La.App. 1st Cir.), writ denied, 532 So.2d 130 (La.1988).
LSA-R.S. 14:42.1 A provides:
Forcible rape is a rape committed where the anal or vaginal sexual intercourse is deemed to be without the lawful consent of the victim because the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape.
In his brief to this Court, the defendant notes discrepancies between the victim's testimony on direct and cross-examination and concludes that her testimony was not credible. Citing State v. Mussall, 523 So.2d 1305 (La.1988), the defendant concludes that the *83 "eccentricities" in the victim's testimony should have driven a rational trier of fact to have a reasonable doubt of his guilt of this offense. He specifically notes the victim's reluctance to fully detail their previous relationship, including one occasion when they attended a movie together and, later that same evening, engaged in consensual oral sex. The defendant notes that there was no evidence of sexual intercourse other than the victim's testimony. Although the victim claims that the defendant ripped off some of her clothes at the time of this incident, the victim subsequently threw them away. The defendant also notes the testimony of the defense expert, Dr. James Freeman. Dr. Freeman observed the photographs depicting bruises which the victim claimed to have been caused by the defendant during the incident and concluded that, based on the color of these bruises (from which the age of the bruises can be deduced), they could not have resulted from injuries sustained at the time the rape allegedly occurred. The defendant also states that the victim's testimony was legally insufficient to prove force, threats of force, or resistance.
The fact that the defendant had sexual intercourse with the victim is not in doubt. The only issue is whether the victim consented to sexual intercourse and later changed her mind, as the defendant testified, or the defendant forced the victim to submit, as the victim testified. Accordingly, the defendant's conviction of forcible rape hinged upon a determination of the credibility of the witnesses. As the trier of fact, the jury was free to accept or reject, in whole or in part, the testimony of any witness. State v. Richardson, 459 So.2d 31, 38 (La.App. 1st Cir. 1984). Furthermore, where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Richardson, 459 So.2d at 38.
Contrary to the defendant's argument, the victim's testimony established sufficient force by the defendant and resistance by the victim. The victim testified that the defendant grabbed her from behind and pinned her arms. She indicated that she felt certain her shoes left marks on the defendant's floor as he pushed her toward the bedroom. The victim specifically testified that she told the defendant, "Stop, whoa, no, don't." However, once inside the bedroom, the victim did not try to resist the defendant. She explained that she did not resist at this point or tell the defendant to stop because she felt that he would not listen.
The testimony of the victim is sufficient to establish the elements of the offense. State v. Creel, 540 So.2d 511, 514 (La.App. 1st Cir.), writ denied, 546 So.2d 169 (La. 1989). On appeal, this Court will not assess the credibility of witnesses or reweigh the evidence to overturn a fact finders's determination of guilt. State v. Creel, 540 So.2d at 514. The unanimous guilty verdict returned in this case indicates that the jury accepted the victim's testimony that she was forcibly raped and rejected the defendant's testimony that this act of sexual intercourse was consensual.
After a careful review of the record, we are convinced that a rational trier of fact, viewing all of the evidence as favorable to the prosecution as any rational fact finder can, could have concluded that the State proved beyond a reasonable doubt that the defendant was guilty of forcible rape. Accordingly, the trial court did not err in denying the defendant's motion for new trial and motion in arrest of judgment.
These assignments of error are meritless.
ASSIGNMENTS OF ERROR NOS. FOUR, TEN, AND ELEVEN:
In these assignments of error, defendant contends that reversible error occurred when the Ascension Parish District Attorney, Anthony Falterman, had an ex parte communication with the jury venire prior to trial.
On November 5, 1991, Mr. Falterman addressed the jury venire, informing them that they were dismissed for that day and that they would have to return to court for the defendant's trial, which was scheduled to begin on November 7. Shortly before trial, defense counsel filed a motion to dismiss the jury venire or, in the alternative, a motion *84 for individual voir dire examination of each prospective juror to determine the effect of the District Attorney's comments. Prior to voir dire examination, the trial court conducted a brief hearing on the motion, during which Mr. Falterman admitted that he had addressed the jury venire to inform them that they were dismissed for that day and they would need to return in two days "to determine the guilt of the accused." Mr. Falterman explained that he did not attempt to taint the venire and that such a conclusion would become evident during voir dire examination. After entertaining arguments from counsel, the trial court denied the defendant's motion and stated that voir dire examination would be conducted in groups of six prospective jurors per panel. The trial court expressed a belief that any admonition to disregard the District Attorney's comments might simply emphasize them and noted that, if the jury had been tainted by his remarks, such a result probably would become evident after the first panel of prospective jurors was examined.
During voir dire examination, defense counsel specifically questioned the first panel of prospective jurors about the District Attorney's comments two days earlier. He also asked a subsequent panel of prospective jurors if anything had been said to them prior to trial which would alter the defendant's presumption of innocence. In both instances, the responses of the prospective jurors indicated that they understood the defendant was presumed innocent until proven guilty.
The defendant again raised the issue of the District Attorney's ex parte comments to the jury venire as a ground in support of his motion for new trial and motion in arrest of judgment. The trial court denied these motions, noting that defense counsel had the opportunity to question the prospective jurors on this issue during voir dire examination and concluding that the defendant was not prejudiced by the District Attorney's pretrial remarks to the jury venire.
In determining whether or not a defendant was denied a fair trial, the decision of whether or not the jury was or possibly could have been influenced is one which is necessarily left to the sound discretion of the trial court, the exercise of which will not be disturbed on appeal unless it appears that prejudice has resulted. State v. Edwards, 591 So.2d 748, 755 (La.App. 1st Cir.1991).
In his brief to this Court, the defendant cites State v. Bates, 508 So.2d 1346 (La.1987), for the proposition that "ex parte pretrial contact with the venire is presumptively prejudicial and mandates reversal." On the other hand, the State contends that the defendant is not entitled to a reversal of his conviction because he failed to prove that he was prejudiced by this ex parte pretrial communication. In Bates, the Louisiana Supreme Court reversed a conviction because the District Attorney sent out questionnaires to the jury venire. While the Supreme Court stated that any private communication, direct or indirect, with a juror after the trial had begun is "presumptively prejudicial" and indicated that the defendant therein argued for a similar rule in a pretrial context, in reversing the conviction the Supreme Court did not expressly indicate whether or not pretrial communications also were presumptively prejudicial.
Regardless of the standard to be applied, we find that no reversible error occurred herein. The trial court correctly denied the defendant's motion to dismiss the jury venire, since voir dire examination was available to defense counsel as a means to explore the potential impact of the District Attorney's ex parte remarks upon the prospective jurors. See and compare State v. Bland, 419 So.2d 1227, 1229-1230 (La.1982). There is no doubt that, regardless of the District Attorney's intent in this matter, his decision to address the jury venire under these circumstances violated applicable ethical guidelines, and we do not approve of his conduct herein. Nevertheless, the issue to be determined is whether or not the jury venire was tainted by these remarks. Even if the District Attorney's pretrial ex parte comments to the jury venire were presumptively prejudicial, this presumption of prejudice was overcome by the responses of the prospective jurors during voir dire examination. Our review of the entire voir dire examination indicates that the prospective jurors were not improperly influenced by the *85 District Attorney's remarks. The prospective jurors clearly understood the presumption of the defendant's innocence. Accordingly, the trial court correctly denied the defendant's motion for a new trial and motion in arrest of judgment.
For the above reasons, these assignments of error are meritless.
ASSIGNMENTS OF ERROR NUMBERS SIX, SEVEN, AND EIGHT:
In these assignments of error, the defendant contends that the trial court erred in refusing to allow the introduction into evidence of a tape recording of messages allegedly left by the victim on the defendant's telephone answering machine.
In his brief to this Court, the defendant contends that the tape recording was admissible as extrinsic evidence used to impeach the victim's credibility. The defendant asserts that the tape recording would have directly contradicted the victim's testimony regarding the number of telephone calls she made to his residence during their relationship and the contents of messages she left on his telephone answering machine. On two occasions during the trial, defense counsel attempted to introduce the tape recording, but the trial court ruled that this evidence was irrelevant and inadmissible. However, the trial court allowed the defendant to proffer the tape recording for appellate review.
A defendant's right to present a defense is sanctioned constitutionally, and he can testify to or give evidence on any matter relevant to an issue material in the case. State v. Bennett, 517 So.2d 1115, 1118 (La. App. 1st Cir.1987), writ denied, 523 So.2d 1335 (La.1988). A "material issue" is one which is "of solid or weighty character, of consequence, or importance" to the case. State v. Ludwig, 423 So.2d 1073, 1078 (La. 1982).
La.Code of Evidence art. 401 provides:
"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.
La.Code of Evidence art. 403 provides:
Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time.
In questions of relevancy, much discretion is vested in the trial court. State v. Andrews, 451 So.2d 175, 178 (La.App. 1st Cir.), writ denied, 457 So.2d 17 (La.1984). Such rulings will not be disturbed on appeal in the absence of a showing of manifest abuse of discretion. State v. Raymond, 447 So.2d 51, 54 (La.App. 1st Cir.), writ denied, 449 So.2d 1347 (La.1984).
La.Code of Evidence art. 607 D(2) provides:
Attacking credibility extrinsically. Except as otherwise provided by legislation:
Other extrinsic evidence, including prior inconsistent statements and evidence contradicting the witness' testimony, is admissible when offered solely to attack the credibility of a witness unless the court determines that the probative value of the evidence on the issue of credibility is substantially outweighed by the risks of undue consumption of time, confusion of the issues, or unfair prejudice.
Initially, we note that the victim did not deny making a particular number of telephone calls to the defendant's residence, nor did she deny leaving a message referring to the defendant as "Mr. Sexy Voice." Instead, the victim testified that she could not recall how many times she called the defendant and could not remember particular details of the messages left on his telephone answering machine. While the admissibility of this tape recording is a close issue, for the reasons which follow, we conclude that the trial court's rulings were correct. There is no doubt that, if the proper foundation had been laid to establish that the voice in these telephone messages was the victims', the tape recording would have shed some light on the relationship between the defendant *86 and the victim.[1] However, we find that their relationship prior to January 27, 1991, was not the determinative factor in this case. Instead, it was a simple matter of whether or not the victim consented to sexual intercourse with the defendant on this particular occasion. It matters not that the defendant and the victim dated several times prior to the instant offense, or even that on one previous occasion they engaged in consensual oral sex. This conclusion is supported by the following observation. LSA-R.S. 14:41 A formerly provided:
Rape is the act of anal or vaginal sexual intercourse with a male or female person who is not the spouse of the offender, committed without the person's lawful consent.
However, LSA-R.S. 14:41 A, as amended by Act 722, § 1, of 1990, now provides:
Rape is the act of anal or vaginal sexual intercourse with a male or female person committed without the person's lawful consent.
As a result of this amendment, anyone who engages in sexual intercourse with a nonconsenting person is guilty of rape even if the victim is the spouse of the offender. In other words, even the existence of a valid marriage between the victim and the perpetrator at the time of the offense is no longer a defense to a charge of rape if it is proven that the victim did not consent to sexual intercourse. Therefore, given the fact that the key issue in this case was whether or not the victim consented to sexual intercourse with the defendant on January 27, 1991, we find no abuse of discretion in the trial court's rulings that this tape recording of messages allegedly left by the victim on the defendant's telephone answering machine was inadmissible because it was irrelevant to the instant case.
For the above reasons, these assignments of error are meritless.
ASSIGNMENT OF ERROR NUMBER NINE:
In this assignment of error, the defendant contends that the trial court erred in overruling his objection to an improper remark made by the prosecutor during closing argument. Specifically, the defendant contends that the prosecutor improperly referred to his post-arrest silence.
During his rebuttal closing argument, the prosecutor stated the following:
PROSECUTOR: He was given an opportunity when the defendant was arrested to make a statement to straighten this whole mess up. He didn't do it. He made one statement and said, "That's it." He had already called two lawyers. They've orchestrated this offense for you ladies and gentlemen from the day he was arrested until today and don't be bushwhacked. Do like that [indicating] and get the smoke out of our face.
This has been a very highly orchestrated offense.
DEFENSE COUNSEL: I'm going to object to that. I don't think that's proper closing.
PROSECUTOR: He's talking about the inconsistencies in her testimony and how consistent his was.
THE COURT: I'll permit it. Go ahead.
In Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), the United States Supreme Court held that a prosecutor may not seek to impeach a defendant's exculpatory story, told for the first time at trial, by cross-examining him about his failure to have told the story after receiving Miranda warnings at the time of his arrest. The Supreme Court concluded that the use of a defendant's post-arrest silence violates due process.
At the trial, Detective Kevin Hanna of the Ascension Parish Sheriff's Office testified that the defendant made an exculpatory statement after being advised of his Miranda rights. According to Det. Hanna, the defendant admitted to engaging in oral sex and sexual intercourse with the victim, but he claimed that the victim consented. Subsequently, when Det. Hanna asked if the defendant would consent to a taped statement, he *87 then declined and requested to speak with his attorney before making any further statements.
During defense counsel's closing argument, he made reference to alleged inconsistencies in the victim's version of events and claimed that there were no such inconsistencies in the defendant's version of events. The prosecutor's remarks quoted above clearly were made in response to defense counsel's closing argument. The prosecutor was not focusing on the defendant's post-arrest silence; instead, he was noting the fact that the defendant spoke with two attorney's before making this exculpatory statement. Furthermore, the defendant obviously did not immediately exercise his right to remain silent, since he made an oral exculpatory statement before declining to give a taped statement. As such, the prosecutor's rebuttal closing argument did not violate Doyle. See Anderson v. Charles, 447 U.S. 404, 100 S.Ct. 2180, 65 L.Ed.2d 222 (1980); State v. Wallace, 612 So.2d 183, 188-189 (La.App. 1st Cir.1992), writ denied, 614 So.2d 1253 (La. 1993); State v. Jones, 490 So.2d 613, 615 (La.App.2d Cir.), writ denied, 495 So.2d 301 (La.1986). Because these remarks by the prosecutor referring to the defendant's exculpatory statement were permissible under these circumstances, the trial court properly overruled the defendant's objection.
This assignment of error is meritless.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] Even relevant evidence may be excluded if its probative value is substantially outweighed by other legitimate considerations in the administration of justice. See La.Code of Evidence art. 403; State v. Mosby, 595 So.2d 1135, 1138 (La.1992).