STATE OF LOUISIANA
v.
SHARON BARNES OLDEN
2008 KA 1695
Court of Appeals of Louisiana, First Circuit
June 12, 2009.
Not Designated for Publication
Hon. DOUG MOREAU District Attorney TERRI R. LACEY HARRELL "BUTCH" WILSON JAMES "DAVID" CALDWELL Ass't. Attorneys General Baton Rouge, LA, Counsel for Appellee. State of Louisiana
KATHERINE M. FRANKS ABITA SPRINGS, LA, Counsel for Appellant Sharon Barnes Olden.
BEFORE: CARTER, C.J., WHIPPLE AND DOWNING, JJ.
DOWNING, J.
The defendant, Sharon Barnes Olden, was charged by grand jury indictment with one count of theft over $500.00 by fraudulent conduct and five counts of filing or maintaining false public records, violations of La. R.S. 14:67B(1) and La. R.S. 14:133.[1] The defendant pled not guilty. After a bench trial, the defendant was found guilty as charged. As to each count, the defendant was sentenced to three years imprisonment at hard labor, to be served concurrently. The trial court suspended execution of the sentences. The trial court imposed three years of active, supervised probation with general and special conditions, including payment of a two-thousand-dollar fine on each count, payment of court costs and fees, and six months of home incarceration. The defendant appealed, raising the following assignments of error:
1. The record does not reflect a valid waiver of the right to a jury trial prior to the commencement of trial.
2. The minutes and commitment order incorrectly state that the defendant is required to pay the fines to the Judicial Expense Fund. Alternatively, the assignment of funds to the Judicial Expense Fund is a due process violation and an impropriety that warrants setting aside the convictions.
3. The "Conditions of Probation" form appearing in the record reflects that additional conditions of probation were "imposed" by the Probation Department in error and should be set aside.
4. The sentences are constitutionally excessive.
5. The denial of surrebuttal testimony was error where the primary purpose of the rebuttal testimony was not to impeach the defense case but, rather, to offer alternative proof of an element of the offense not established during the prosecution's case-inchief.
6. The trial judge erred in failing to grant a motion for acquittal.
7. The guilty verdicts should be set aside because the defendant's due process rights were violated when the defendant was adjudicated guilty of theft in excess of five hundred dollars and five counts of filing or maintaining false public records.
In an unpublished opinion, we pretermitted discussion of assignments of error numbers two, three, four, five, six, and seven and remanded for an evidentiary hearing on the question raised in assignment of error one, of whether the defendant waived her right to a jury trial. State v. Olden, XXXX-XXXX (La. App. 1st Cir. 2/13/09)(unpublished), 5 So.3d 314 (Table). On remand, the trial court held an evidentiary hearing and determined that the defendant waived her right to a jury trial. The trial court ordered that the matter be sent back to this court. The defendant filed a supplemental brief reasserting the argument raised in the original first assignment of error based on the supplemented record and further assigning error to the denial of her Sixth Amendment constitutional right to counsel (assignment of error number eight). For the following reasons, we affirm the convictions and sentences and remand for amendment of the minute entry and commitment.

STATEMENT OF FACTS
Sharon Olden owned and operated A-Plus Professional Packing And Moving Company (A-Plus Movers). It had commercial liability insurance and was bonded, and had an occupational license. The company would rent Ryder trucks after bids were accepted from, among others, the Louisiana Department of Transportation and Development (DOTD). The Company would also help people move whose property had been purchased for road or highway projects.
In November 2005, as the supervisor of the acquisition of property to build highways and of relocation matters, Hubert Graves of the DOTD conducted an audit of the district managed by Joseph Recile. Graves examined the files for an ongoing project from St. Francisville to Bains (West Feliciana Parish). Graves noted that the department was required to receive two public independent bids and offer the lower of the two to the property owner to have their belongings relocated. Graves first noted that the bids were faxed at the same time from the same machine. He also noted high rates and other similarities among purported independent bid paperwork for A-Plus Movers and Able Relocation Company (Able Movers).
Graves showed the paperwork to his immediate supervisor, Pam Leon. He discussed his concerns with Lloyd B. Scallen, a real estate administration DOTD employee and records custodian. Scallen met with investigators of the Attorney General's Office and the matter, including documentation, was referred to them. The follow-up investigation by the Attorney General's Office led to the instant charges.

ASSIGNMENTS OF ERROR NUMBERS ONE AND EIGHT (SUPPLEMENTAL BRIEF)
In assignment of error number one of the defendant's supplemental brief, the defendant argues that the record, including the portion supplemented upon remand, reflects that the defendants were not advised of the right to a trial by jury. The defendant contends that neither she nor defense counsel acknowledged on the record a discussion about a waiver or made a voluntary waiver. The defendant concludes that the trial court erred in finding a knowing and intelligent waiver, and the ruling should be vacated.
In the supplemental brief, the defendant also assigns error to the denial of her Sixth Amendment right to counsel. The defendant notes that her trial defense counsel admitted under oath that he never discussed with her the issue of her right to a jury trial and waiver thereof. The defendant argues that her trial defense counsel was in direct violation of the Rules of Professional Conduct. The defendant contends that trial counsel's failure to communicate with her on this issue denied her the right to a jury trial. The defendant concludes that the ineffectiveness of trial counsel in this case resulted in a structural error in the trial proceedings and that a nullification of the convictions and remand for a new trial are mandated.
Since the defendant in this case was entitled to a jury trial comprised of six jurors, all of whom must concur to render a verdict, the record must show that a jury trial was knowingly and intelligently waived. La. Const, art. I, § 17A; La. Code Crim. P. art. 782A; La. Code of Crim. art. 780; see also La. R.S. 14:133C; La. R.S. 14:67B(1). Thus, we will examine the supplemented record to determine whether it supports the trial court's ruling on remand.
As reflected in the supplemented record, on March 22, 2007, a pretrial proceeding took place wherein a trial date was set, and the defense counsel stated as follows:
Mr. Talley (defense counsel): And, your honor, Robert Talley for Olden and Recile. We will agree to waive a jury on this case and have  maintain this as a bench trial.
The defendants were not present. As noted in our previous opinion in this case, the defense appeared to acknowledge a waiver at a June 25, 2007 hearing on a State motion to continue the trial. At this proceeding, the trial court asked, "Well, this is a waived-jury trial, right?" The defense counsel stated, "Yes, sir." The defendants did not object to the bench trial, but he raised the issue on appeal.
As previously stated, this court remanded the case to the trial court for an evidentiary hearing on whether the defendant waived her right to a jury trial. At the evidentiary hearing, Talley (trial defense counsel) testified, in part, as follows: "the decision was made, based on the information available to me, to waive the jury. That was not only my choice, that was the choice of Mr. Recile." Talley added, "And information at that time indicated that Ms. Olden was agreeable to that, but that in fact turned out not to be true." In responding to questioning by the trial court, Talley explained that based on conversations he had with Recile, he understood the defendant "was agreeable or amenable to waiving the jury," but he never personally discussed the issue with her until this court's initial opinion remanding for an evidentiary hearing in this case was rendered. At that point, the defendant informed Talley that she had never been informed of her right to waive a jury and would have chosen a jury trial. The following colloquy took place when the trial court questioned Talley.
Q. And you do remember several conferences in chambers were [sic] we discussed with the other attorneys not only the problems inherent with dual representation, do you remember a statement by me, "I don't know why anyone would choose to put their fate in one person's hand"?
A. I remember that  that had to do with the mutual representation. Correct.
Q. No. That was about putting it in the bench trial as opposed to a jury trial.
A. Oh, well, I misunderstood. I thought that was a reference to me.
Butch Wilson of the Attorney General's Office, one of the prosecutors in the trial at issue, also testified at the evidentiary hearing. Wilson recalled discussions regarding jury trial waiver at a conference in the judge's chambers during the weeks leading to the trial. According to Wilson, three issues were discussed at the conference: waiver of a jury trial, a plea offer, and the conflict issue. Wilson further testified that Talley represented that he had discussed all three issues with his clients separately. David Caldwell, also a prosecutor of the Attorney General's Office, similarly testified at the hearing. Caldwell remembered the discussion regarding the plea offer, waiver of a jury trial, and dual representation. Caldwell specifically testified, "we also talked to Mr. Talley about whether or not he had discussed with his clients the waiver of the jury trial." According to Caldwell, Talley stated that he had and then went into the jury chamber room and spoke with the defendant alone for at least an hour.
The defendant testified at the hearing that Talley never discussed the option of a jury trial or the waiver of that right. She further stated that she did not question the bench trial proceeding and just "thought that's the way it really was supposed to go."
Before stating his ruling, the trial judge noted that Talley waived the jury trial on behalf of the defendants on the record. The judge further stated that Talley "denies a conference in chambers where he told me in front of two witnesses that he had discussed it with her, and he also testified that it never came up back there." The trial judge noted the testimony of Wilson and Caldwell. Further, the trial judge noted that the defendant is an intelligent business woman, but she testified that the issue had never been discussed with her. The trial judge stated that he believed Talley when he stated in chambers that he discussed the issue with the defendant. The trial court concluded that the waiver was knowing and intelligent.
As the Supreme Court said in State v. Kahey, 436 So.2d 475, 486 (La. 1983), when the defendant waives his right to a jury trial by opting for a judge trial, as opposed to when he waives all trial rights by pleading guilty, the trial judge is not required to personally inform the defendant of his right to a jury trial. See also La. Code Crim. P. art. 780. It is preferred but not necessary, for the defendant to waive her right to a jury trial personally. Counsel, however, may waive the right on the defendant's behalf, provided that the defendant's decision to do so was made knowingly and intelligently. State v. Pierre, 2002-2665 (La. 3/28/03), 842 So.2d 321, 322 (per curiam); Kahey, 436 So.2d at 486-87.
A claim of ineffective assistance of counsel is more properly raised in an application for post conviction relief in the trial court than by appeal. This is because post conviction relief provides the opportunity for a full evidentiary hearing under La. Code Crim. P. art. 930.[2] However, when the record is sufficient, this court may resolve the issue on direct appeal in the interest of judicial economy. State v. Lockhart, 629 So.2d 1195, 1207 (La. App. 1st Cir. 1993), writ denied, 94-0050 (La. 4/7/94), 635 So.2d 1132.
The claim of ineffective assistance of counsel is to be assessed by the two-part test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). State v. Fuller, 454 So.2d 119, 125 n.9 (La. 1984). The defendant must show that counsel's performance was deficient and that the deficiency prejudiced him. Counsel's performance is deficient when it can be shown that he made errors so serious that he was not functioning as the "counsel" guaranteed to the defendant by the Sixth Amendment. Counsel's deficient performance will have prejudiced the defendant if he shows that the errors were so serious as to deprive him of a fair trial. The defendant must make both showings to prove that counsel was so ineffective as to require reversal. Strickland, 466 U.S. at 687, 104 S.Ct. at 2064. To carry his burden, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S.Ct. at 2068.
When reviewing a trial court ruling based upon findings of fact, great weight is placed upon the determination of the court below because of its opportunity to observe the witnesses and weigh the relative credibility of their testimony. See State v. Carr, 530 So.2d 579, 589 (La. App. 1st Cir.), writ denied, 533 So.2d 354 (La. 1988), cert. denied, 489 U.S. 1098, 109 S.Ct. 1573, 103 L.Ed.2d 939 (1989). The record reflects in the instant case that counsel waived a jury trial on the defendant's behalf. Although counsel testified that he could not recall any such discussion, according to the prosecutors and the trial judge, the defense counsel stated in chambers that he discussed the issue with the defendants separately. The trial court specifically recalled statements made in chambers and was in the position to make a credibility determination. The trial court found the waiver by defense counsel on the defendant's behalf knowing and intelligent based on assurances made to the trial court by the defense attorney. The record, as supplemented upon remand, shows that the defendant knowingly and intelligently waived her right to a jury trial. Consequently, we do not find any abuse of discretion in the trial court's ruling upon remand or any deficiency in the trial defense counsel's performance. It is unnecessary to address the issues of both counsel's performance and prejudice to the defendant if the defendant makes an inadequate showing on one of the components. State v. Serigny, 610 So.2d 857, 859-60 (La. App. 1st Cir. 1992), writ denied, 614 So.2d 1263 (La. 1993). Because the defendant is unable to support the deficient performance prong of the Strickland test, the ineffective assistance of counsel claim is without merit. Thus, we will address the remaining assignments of error.

ASSIGNMENT OF ERROR NUMBER TWO
In the second assignment of error, the defendant contends that the fines imposed by the trial court should not be paid to the Judicial Expense Fund. The defendant notes that the transcript does not state that the fines are to be applied to the fund and that the transcript prevails over the minute entry and commitment order to the contrary. The defendant contends that the assignment of the fines to the Judicial Expense Fund demonstrates a due process violation and an impropriety that warrants setting aside the convictions. The defendant argues that the judges of the Nineteenth Judicial District Court have a vested interest in generating funds from fines and forfeitures to operate the court, pay staff salaries, and provide their own travel/seminar expenses.
The State notes, however, that East Baton Rouge Parish does not have a general criminal court fund. La. Code Crim. P. art. 895.1B(2) states as follows:
B. When a court suspends the imposition or the execution of a sentence and places the defendant on probation, it may in its discretion, order placed, as a condition of probation, an amount of money to be paid by the defendant to any or all of the following:
* * *
(2) To the criminal court fund to defray the costs of operation of that court.
Louisiana Revised Statutes 15:571.1 lA(l)(a), in pertinent part, provides:
A. (1)(a) All fines and forfeitures. . . shall be paid into the treasury of the parish in which the court is situated and deposited in a special "Criminal Court Fund" account, which, on motion by the district attorney and approval order of the district judge, may be used or paid out in defraying the expenses of the criminal courts of the parish as provided in Ch.C. Articles 419 and 421 and R.S. 16:6, in defraying the expenses of those courts in recording and transcribing of testimony, statements, charges, and other proceedings in the trial of indigent persons charged with the commission of felonies, in defraying their expenses in the preparation of records in appeals in such cases, for all expenses and fees of the petit jury and grand jury, for witness fees, for attendance fees of the sheriff and clerk of court, for costs and expenses of a parish law library, and for other expenses related to the judges of the criminal courts and the office of the district attorney....
However, La. R.S. 15:571.11, which was partially amended and reenacted by 1993 La. Acts No. 834, § 4 (Bail Reform Act), does not create a new court fund but rather uses the term "court fund" generically to refer to the existing fund of each judicial district. See Op. Atty. Gen. No. 93-683 (November 16, 1993). Louisiana Revised Statutes 13:991 established an account known as the Judicial Expense Fund in the Nineteenth Judicial District. La. R.S. 13:992A mandates how the funds are to be disbursed, and provides in pertinent part that:
[i]n general, the judicial expense fund is established and may be used for any purpose or purposes connected with, incidental to or related to the proper administration or function of the said court or the offices of the individual judges and is in addition to any and all other funds, salaries, expenses, or other monies that are not or hereafter provided, authorized or established by law for any of the aforesaid purposes.
Based on the foregoing statutory law, it appears that an assignment of the fines to the Judicial Expense Fund would be proper in this case. Nonetheless, the defendant is correct in that the transcript prevails over the minute entry when there is a discrepancy. State v. Lynch, 441 So.2d 732, 734 (La. 1983). In accordance with the sentencing transcript, the trial court did not order that the imposed fines be paid to the Judicial Expense Fund, or any other designation. Thus, in an abundance of caution, we remand for the correction of the minutes and criminal commitment.

ASSIGNMENT OF ERROR NUMBER THREE
In the third assignment of error, the defendant contends that the conditions of probation form in the record contains additional conditions that were not imposed by the trial court. The defendant contends that several of those conditions, specifically those relating to substance abuse testing, mental health evaluations, reading programs, and meeting family obligations, have no basis and should be removed. The defendant concludes that the list of probation conditions should be limited to those imposed at the time of sentencing.
The trial court imposed the following conditions of probation: a two thousand dollar fine on each count, court costs, a supervision fee, the requirement that the defendant maintain employment, the requirement that the defendant refrain from criminal conduct, and six months in-home incarceration through a courtapproved service. Louisiana Code of Criminal Procedure article 895 requires that a defendant refrain from criminal conduct and pay a supervision fee to defray the costs of probation supervision as general conditions of probation that shall be imposed by the trial court. Article 895 further lists specific conditions that may be imposed by the trial court. Article 895 does not require that every condition of probation be listed at the time of the sentencing. In accordance with Subsection I, the defendant shall be given a certificate setting forth the conditions of his probation and shall be required to agree in writing to the conditions.
As noted by the defendant, the record contains a Conditions of Probation form setting forth the conditions of the defendant's probation, and the defendant signed the form. Thus, the defendant was given sufficient notice of the conditions of her probation and agreed thereto in accordance with La. Code Crim. P. art. 895. This assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER FOUR
In the fourth assignment of error, the defendant contends that her sentences are unconstitutionally excessive. The defendant specifically argues that the fines imposed do not serve the purpose of a suspended sentence, which is to allow the convicted person to remain a productive member of society without the necessity of confinement. The defendant notes her status as an indigent offender.
The State argues, in brief, that this court should not consider the issue raised by defendant because defense counsel failed to properly preserve the issue. Louisiana Code of Criminal Procedure article 881.1, states, in pertinent part:
A.(1). . . [W]ithin thirty days following the imposition of sentence or within such longer period as the trial court may set at sentence, the state or the defendant may make or file a motion to reconsider sentence.
* * *
B. The motion shall be oral at the time of sentence or shall be in writing thereafter and shall set forth the specific grounds on which the motion is based.
* * *
E. Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.
As noted by the State, the defendant did not object to the sentences or file a motion to reconsider them. This court has held that under the clear language of La. Code Crim. P. art. 881.1(E), the failure to file or make a motion to reconsider sentence precludes a defendant from raising an excessiveness argument on appeal. See State v. Duncan, 94-1563, p. 2 (La. App. 1st Cir. 12/15/95), 667 So.2d 1141, 1143 (en banc per curiam). Thus, the defendant is procedurally barred from having this assignment of error reviewed.

ASSIGNMENT OF ERROR NUMBER FIVE
In the fifth assignment of error, the defendant contends that the trial court erred in denying surrebuttal testimony. The defendant contends that the primary purpose of the rebuttal testimony was not to impeach the defense case, but to offer an element that was not established during the prosecution's case-in-chief. The defendant claims that State witness Mirl Bankston was placed on the stand to establish a new theory of the State's case. The defendant notes that Bankston testified that she packed her kitchen and living room because she was told that she would be paid money to pack herself, although a mover was selected to complete her move. The defendant contends that the trial court erred in denying the defense requests to call an additional witness, one of the movers who actually repacked and unpacked Bankston's belongings. The defendant notes that the State's closing argument included a claim that Bankston's testimony alone showed that the defendant charged for packing and unpacking services that were not performed. The defendant contends that this basis of theft was not established in the State's case-in-chief.
The defendant further contends that the cross-examination of Bankston did not correct the error since the witness was elderly and uncertain of the facts. The defendant argues that the trial court violated her constitutional right to present a defense to the State's new theory of its case. The State contends that Bankston's testimony consisted of strictly rebuttal testimony and did not contain entirely new facts, adding that "[t]he door was opened during the defendant's testimony." (State's original brief p. 21).
The prosecution is entitled in rebuttal to explain, repel, counteract, or contradict evidence adduced by the defense to strengthen its own case. It may not, however, introduce new issues or facts, or reserve part of its case-in-chief for rebuttal. See State v. Deboue, 552 So.2d 355, 362 (La. 1989), cert. denied, 498 U.S. 881, 111 S.Ct. 215, 112 L.Ed.2d 174 (1990); State v. Williams, 445 So.2d 1171, 1180-81 (La. 1984).
When new facts or issues are adduced on rebuttal, a trial judge has the discretion to permit the introduction of additional defense evidence prior to closing argument. See La. Code Crim. P. art. 765(5). The determination of the trial court to deny the introduction of surrebuttal evidence will not be disturbed absent an abuse of discretion. See La. Const, art. I, § 16; State v. Harper, 93-2682, pp. 7-8 (La. 11/30/94), 646 So.2d 338, 342-43; State v. Harrison, 553 So.2d 422, 425-26 (La. 1989).
At trial in the instant case, the rebuttal evidence presented by the prosecution consisted of the testimony of Mirl Bankston. A review of the defendant's and Bankston's testimonies reveals the following. The rebuttal was used by the prosecution solely to contradict assertions made by the defendant during her testimony. For example, the defendant presented testimony regarding the size of Bankston's home and the cost for such a move. The defendant stated that Bankston's move was not standard because her home was large and that she "had a lot of stuff in her three bedroom house." Bankston testified that she had a onestory, three bedroom home with two and one-half bathrooms. Despite the defendant's testimony otherwise, Bankston further testified that she packed her own furniture and other items. The prosecutor's rebuttal was limited in scope and did not inject entirely new facts into evidence. The trial judge did not abuse his discretion in denying the defendant's request to introduce surrebuttal evidence. This assignment of error is without merit.

ASSIGNMENTS OF ERROR NUMBERS SIX AND SEVEN
In a combined argument, the defendant argues that the trial court erred in denying her motion for acquittal and that her due process rights were violated in that the evidence presented by the State is insufficient to support the verdicts. As to the motion for acquittal, the defendant specifically contends that the State failed to establish a basis for conviction on either the theft or the filing of false public records charges.
Regarding the due process claim, the defendant contends that this case is devoid of evidence of what was alleged to have been taken. The defendant contends that the State's expert witnesses did not base their opinions as to the reasonableness of the bids on specific personal knowledge of items moved, individual situations, or unique circumstances of a move. The defendant also notes that the State did not present testimony by commercial movers to state that they would have given a lesser bid and completed the moves. The defendant argues that the only thing of value that the State proved was taken was the contingent hope or expectation by DOTD that a lower estimate could have been obtained. The defendant argues that the evidence only established the taking of an inchoate right without practical results since there was no evidence that another mover would have actually provided a lower estimate or actually made the moves at issue. The defendant concludes that the thing taken did not actually have value.
The defendant also argues that the State failed to establish specific intent to commit a theft. The defendant contends that none of the consultants found the bids in question exorbitantly high. The defendant notes that the bids were signed, sent to headquarters, and approved. The defendant argues that the State's initial basis for theft, that the defendant owned both companies, became unviable as the trial progressed. The defendant further argues that the State's second theory, that the bids were not independently sustainable, was likewise unviable. The defendant contends that collusion on the bidding process was not established so there was no fraud, criminal intent, or theft. Regarding the evidence of filing false public records, the defendant contends that it became apparent during the trial that Able Relocation was not a sham company. The defendant further contends that the State did not establish that she knew of the required Louisiana Public Service Commission (PSC) license.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). This standard, now legislatively embodied in La. Code Crim. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, XXXX-XXXX, p. 6 (La. 2/22/06), 922 So.2d 517, 521 (per curiam); State v. Robertson, 96-1048 (La. 10/4/96), 680 So.2d 1165, 1166 (per curiam). The appellate court does not assess the credibility of witnesses or re-weigh evidence. State v. Smith, 94-3116, p. 2 (La. 10/16/95), 661 So.2d 442, 443. A reviewing court accords great deference to the trier of fact's decision to accept or reject the testimony of a witness in whole or in part. Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. See State v. Probst, 623 So.2d 79, 83 (La. App. 1st Cir.), writ denied, 629 So.2d 1167 (La. 1993).
The Jackson v. Virginia standard of review is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, La. R.S. 15:438 provides that the fact finder must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. Probst, 623 So.2d at 82.
Specific intent is a state of mind and need not be proved as a fact; it may be inferred from the circumstances of the transaction and the actions of the defendant. State v. Graham, 420 So.2d 1126, 1127 (La. 1982). Specific intent is that state of mind that exists when the circumstances indicate the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1); State v. Lindsey, 543 So.2d 886, 902 (La. 1989), cert. denied, 494 U.S. 1074, 110 S.Ct. 1796, 108 L.Ed.2d 798 (1990). The determination of whether the requisite intent is present in a criminal case is for the trier of fact. State v. Huizar, 414So.2d 741, 751 (La. 1982).
The defendant was convicted of theft in an amount greater than $500, a violation of La. R.S. 14:67. The indictment specifically states that between December 8, 2003, and October 4, 2004, the defendant committed theft in an amount over $500 from the Louisiana Department of Transportation and Development by means of fraudulent conduct, practices, or representations. Louisiana Revised Statutes 14:67A provides:
Theft is the misappropriation or taking of anything of value which belongs to another, either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices, or representations. An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential.
The defendant was further charged with and convicted of five counts of knowingly filing false public records with the Louisiana Department of Transportation and Development on or about December 8, 2003, January 14, 2004, February 25, 2004, March 30, 2004, and October 4, 2004. Filing false public records is defined by La. R.S. 14:133 A, in pertinent part, as follows:
Filing false public records is the filing or depositing for record in any public office or with any public official ... with knowledge of its falsity, of any of the following:
* * *
(3) Any document containing a false statement or false representation of a material fact.
Lloyd B. Scallan testified that Able Movers and A-Plus Movers presented excessively high bids. Scallan described the bids as "anywhere from three to maybe ten times more than what the normal move would be." Scallan further noted that the bids were not on DOTD forms, but were on computer-generated forms and were faxed from the same fax machine. The bids were reported to the department's legal section. According to Scallan, Recile was the manager of District 61 from early 2003 until January 2006. As manager, Recile worked with his staff and a relocation agent to hire two separate independent firms to give a bid and provide relocation services if selected. The defendant was a mover. According to Scallan's records, Recile selected A-Plus Movers and Able Movers for relocation efforts and hired the defendant. Scallan informed investigators of the Attorney General's Office that the defendant may possibly have been obtaining funds from a bid, subcontracting the work, and retaining a portion of the bid payment, but he did not concede the point.
Hubert Graves was qualified as an expert in relocation moving expenses. State Exhibit 1 consists of an itemized bid by A-Plus Movers for $8,504.00. Able Movers submitted a bid for the same moving job in the amount of $10, 859.50. Based on his assessment of the particular move, Graves testified that it would only cost approximately $1,600.00. Graves further testified that the Department paid $15,298.25 for a move valued at $1,000.00. Further, an A-Plus Movers job that was worth approximately $1,400.00 was billed at $11,331.25. State Exhibit 5 consists of a bid from Able Movers for $12,100.00. A-Plus Movers submitted a bid for the same job for $11,331.25. Graves testified that the move was for an average house with three bedrooms, a kitchen, a dining room, a family room, one small storage area, a covered patio, and a covered carport. Based on his experience, the cost of the move was a maximum of $4,000.00. Graves also examined the moving job detailed in State Exhibit 6, wherein $15,298.25 was paid for the move. The floor plan consists of a 2600 square foot house with patios and porches, a garage, and a storage area. Graves testified that a bid of $5,000.00 or more would be "into shaky territory." Graves noted an itemized charge of $1,250.00 for maid services as being especially overestimated.
Some of the paperwork issued by A-Plus Movers indicates that the company was "Insured, licensed, and bonded." Graves testified that such requisites are regulated by the PSC. According to Graves's testimony, the company was not insured. James Grey of the PSC also testified that A-Plus Movers, the defendant, and Able Relocation Company have never been licensed to perform professional moves. Graves testified that he called the telephone number included in the bid from Able Movers and was told that he had the wrong telephone number. Denise Elder of DOTD (real estate agent of the Relocation Assistance Unit) assisted Graves in the pre-audit of Recile's district. Elder also attempted to contact a representative of Able Movers to question them regarding the cost of the moves. Based on the contact she received, Elder concluded that the telephone number provided was incorrect. Some of the bids submitted in the name of A-Plus Movers were signed by "Mr. Muse" or "Mr. Alfred Muse."
Agent Don Tusa of the Attorney General's Office testified that bids from Able Movers and A-Plus Movers contained misspellings of some of the same words. For example the word `quantity' was spelled `quanity.' Agent Tusa further noted that the bids had similar formats and styles and were faxed from the same fax machine at the same time. Specifically, bids from both companies were sent from Benton Rehabilitation Hospital where the defendant worked as a dietician. Other bids from the companies were faxed from the Ministry of Love Church where the defendant was a member and her sister is the pastor.
Agent Tusa visited the address provided on the bids by Able Movers, 2900 North Street, and discovered that it was the location of an abandoned building. Agent Tusa obtained a copy of a cash sale of the property from the defendant to Alfred Muse and Chancey Jones, dated September 25, 2001. Certified tax deeds from the assessor's office indicate that the property was seized from the defendant because of nonpayment of tax assessments. The Attorney General's office received documents from Capital One Bank including a bank surveillance photograph of the defendant, deposit slips, and checking account information. One counter deposit slip for Able Movers dated February 25, 2006, was signed in the defendant's name. A bank statement for Able Movers was addressed to 13605 Cadiz Drive, Baker, Louisiana, which was the defendant's home address and an address provided for A-Plus Movers. The signature card for Able Movers included signatures for Jerry B. Lee and Sharon O. Barnes. Agent Tusa further testified that he interviewed Alfred Muse, and Muse denied any association with A-Plus Movers or the defendants.
Mark Conrad Speyrer worked for DOTD and Recile, in particular on several highway projects, including the Joor Road widening project. Speyrer recalled dealing with two bidders as a consultant, Able Movers and A-Plus Movers. Speyrer testified that he was given an address of 1350 Progress Street for Muse and Able Movers and used that address for correspondence. This address, however, also was used by the defendant.
B. J. Janice worked as a consultant for the relocation program of District 61 when Recile was the manager of the district. Janice testified that he used Able Movers and A-Plus Movers as Recile suggested. Recile did not suggest any other movers. Janice was aware of the defendant's affiliation with A-Plus Movers. Janice further testified that he perceived the bids from the companies as "very high."
Jerry Braswell was the manager of District 61 before Recile. Regarding a check issued to A-Plus Movers in the amount of $15,298.00 for a residential move, Braswell testified that such a bid was extremely high and as the district manager he would have questioned it. (Braswell also testified that an on-site review would be necessary to calculate the cost of a move. Nonetheless, based on cursory reviews, Braswell identified several bids in evidence as excessive.
Joey Delpit, DOTD real estate specialist, testified that the defendant began working with District 61 because the defendant's ex-husband, Milton, was an acquaintance of Delpit. Milton informed Delpit of the defendant's moving company. Delpit further testified he wasn't sure if Recile knew the defendant.
With twenty-five years experience with DOTD in District 61, defense witness Nathan L. Crawford, Jr. was accepted as an expert in DOTD relocation procedures and moving expense estimates. Crawford recalled working on the relocation detailed in the State's third exhibit and was familiar with the site of the move. Crawford stated that it was not problematic that only two bidders, A-Plus Movers and Able Movers, completed the project due to a lack of availability of movers with openings. Crawford also testified that the A-Plus bid for that move was reasonable based on his assessment of the site. Crawford stated that he did not take notice of fax numbers or signatures on bids. Crawford also found the other bids submitted by A-Plus and Able Movers reasonable.
Defense witness Stanley Barnes testified that his deceased cousin, Chancey Jones, had a business called "Able Relocation." Barnes worked for Able Relocation for four or five years. It was stipulated that Jones died on February 6, 2006. Barnes testified that he also occasionally worked for the defendant at A-Plus Packing. Barnes testified that he was paid cash by both companies. During crossexamination, Barnes testified that he did not report the income. Defense witnesses Larry Lee, Jessie James London, and Monica Parker testified that they helped Jones with moving jobs and were paid cash. London and Parker referred to Jones as "Pee Wee." Lee testified that Jones was the defendant's adopted son. London confirmed that he did not report the income from Jones. Parker testified that Jones's business was called "Able." Parker did not report the income. Defense witness Agent Terry Apple of the Attorney General's office was one of the investigators assigned to this case. Agent Apple specifically testified that he found no Secretary of State filings, occupational licenses, place of domicile, or telephone listing for the company.
The defendant's sister Jerry D. Lee testified. According to Lee, the defendant raised Jones, but she never officially adopted him. Lee further testified that "Able Location" was Jones's Company and that the defendant's moving company was called "A-Plus Professional Packing." On June 23, 2004, a bank account was opened for Able Movers with signatures by Lee and Sharon O. Barnes. Lee testified that she signed for the account because Jones "had a problem with money" and she wanted his children to be taken care of. Lee testified that Sharon O. Barnes and the defendant were one and the same. She further stated that the defendant later removed her name from the account.
Michael G. Hereford, a relocation and acquisition specialist and consultant, was an expert in DOTD real estate relocation procedures and moving cost estimation. Hereford testified that DOTD relocation procedures do not necessarily require two bids. Defense witness Alfred Muse, Sr. testified that he gave "Pee Wee" permission to sign his name because he wanted to start a car wash and/or moving business. Tamika Thomas testified that she did clerical work for the defendant and Jones. Thomas created service bid forms for Able Movers and A-Plus Movers. Thomas stated that the defendant only provided information for the A-Plus Movers bids and Jones submitted information regarding the Able Movers bids. Recile testified that he did not hire movers as the district manager. According to Recile, mover bids were approved by the property owner.
The defendant testified that she started A-Plus Movers in or around 1999, and she minimized her association with Able Movers. The defendant testified that Able Movers was owned by Jones and that the bids were independent. The defendant began raising Jones when he was three years old, after his mother, a friend of the defendant's brother, left him in the care of his elderly grandmother. Consistent with the testimony of Lee, the defendant testified that she was a signatory on Able Mover's bank account. The defendant stated that she wanted access to the account to assist Jones with the care of his children. The defendant testified that she was unaware of the requirement to obtain a license through the PSC. She also testified that Recile did not have any involvement in her bids.
The evidence shows that the defendant submitted bids for moving jobs that were purported to be independent bids. The defendant was paid funds in excess of the cost by means of fraudulent conduct. Further, the defendant submitted bids that contained false claims as to the licensing of her operation. While bids were submitted by Able Movers and A-Plus Movers as separate entities, the evidence showed that the bids were submitted from the same fax machine within seconds of each other and contained other similarities such as the same misspelled words, including property owners' names. Based on the evidence presented by the State, Able Movers and A-Plus Movers were not two separate entities. Thus, DOTD did not receive two independent bids for the moving jobs in question.
When a case involves circumstantial evidence and the trier of fact reasonably rejects the hypothesis of innocence presented by the defendant's own testimony, that hypothesis falls, and the defendant is guilty unless there is another hypothesis that raises a reasonable doubt. State v. Captville, 448 So.2d 676, 680 (La. 1984). The trier of fact reasonably rejected the defendant's claim that the bids were similar and faxed from the same machine solely because the two companies shared the same secretary. After a careful review of the record, we are convinced that a rational trier of fact, viewing all of the evidence as favorable to the prosecution as any rational fact finder can, could have concluded that the State proved beyond a reasonable doubt, and to the exclusion of any reasonable hypothesis of innocence, that the defendant was guilty of theft in excess of $500.00 and five counts of filing false public records. Accordingly, the trial court did not err in denying defendant's motion for acquittal. Assignments of error numbers six and seven are without merit.

DECREE
For the above reasons, we affirm the convictions and sentences. We also remand for the amendment of the minute entry and the commitment.
CONVICTIONS AND SENTENCES AFFIRMED; REMANDED FOR AMENDMENT OF MINUTE ENTRY AND COMMITMENT
NOTES
[1] The defendant was originally charged with several other counts that were dismissed. (R. 3, 30). The deceased co-defendant, Joseph Recile, also appealed to this court, but he died after the case was remanded for an evidentiary hearing to determine whether there was a jury trial waiver.
[2] The defendant would have to satisfy the requirements of La. Code Crim. P. art. 924 et seq., in order to receive such a hearing.